C. E. LAWHEAD, *Receiver, etc. v.* MAXINE MURRAY ADAMS *et al.*

(CC. 472)

Submitted April 18, 1933. Decided May 2, 1933.

*Philip P. Gibson,* for plaintiff.
*H. C. Duncan, Jr.,* for defendants.

MAXWELL, PRESIDENT:

This case involves the sufficiency of a plea in abatement filed in a chancery cause. The trial chancellor sustained a demurrer to the plea and certified his ruling to this Court for review.

The plaintiff as receiver of the Guyandotte Bank, a state banking institution, prosecutes this suit against the defendants, stockholders in said bank, to enforce against them the "double liability" imposed by the state Constitution, Article XI, section 6, and by statute, Code 1931, 31-8-32.

It appears from the bill that on February 11, 1931, the state banking commissioner ascertained that the said bank was insolvent and on that day appointed John J. Nash temporary receiver and laid a one hundred per centum assessment against the stock; that on the 7th of August, 1931, the commissioner appointed the plaintiff as receiver and directed that he proceed at once to collect the said assessment; that the defendants, Maxine Murray Adams, Eleanor Mary Duncan and J. Hal Murray, Jr., as distributees of the personal estate of Bertha I. Murray, deceased, were the owners of twenty shares of the stock of said bank and were therefore liable under the Constitution and statute by reason of the said assessment.

By their plea in abatement, the defendants aver that on the day the Guyandotte Bank was ascertained by the commissioner of banking to be insolvent, to-wit, February 11, 1931, the commissioner approved an agreement entered into by and between the said bank, party of the first part, Huntington Clearing House Association, party of the second part, and Twentieth Street Bank, party of the third part, the purpose whereof was to wind up the affairs of the Guyandotte Bank in the manner provided for in said agreement, a copy whereof is exhibited with the plea.

The agreement purports a sale and assignment to the Clearing House Association of all of the assets of the Guyandotte Bank, listed and itemized at $304,446.95. In consideration of which assignment and in further consideration of the execution by the Guyandotte Bank to the Clearing House Association of a note for $100,000, the latter institution undertook and assumed to pay off and discharge for the Guyandotte Bank all of its debts and liabilities listed and itemized at $202,090.51. Though the assets taken over by the Clearing House Association are listed at about $102,000 more than the indebtedness, it nevertheless seems to have been considered by the parties that the assets were not sufficient to discharge the indebtedness, for in paragraph four of the agreement there is this language: ''The assets hereinbefore transferred and listed in paragraph First, not aggregating a sum sufficient to off-set the amount of the liability hereinbefore assumed by the said party of the second part, the Guyandotte Bank agrees to and has executed and delivered to' the party of the second part, simultaneously with the execution of this contract a note for $100,000.00, * * * and the said note is accepted upon the express understanding and agreement that it is executed and delivered without waiver of the statutory liability of the stockholders of the party of the first part.'' The Twentieth Street Bank, party of the third part, was constituted by the terms of said agreement the liquidating agent of the second party to wind up the affairs of the Guyandotte Bank, and for the purpose of meeting the obligations of the Guyandotte Bank the Clearing House Association agreed to execute to the Twentieth Street Bank its note in the sum of $202,090.51, secured by all of the assets of the Guyandotte Bank which were assigned and transferred to the Clearing House Association and by the said note of $100,000. The Twentieth Street Bank agreed to discount the $202,090.51 note of the Clearing House Association and thereby establish a fund for the purpose of meeting the obligations of the Guyandotte Bank. The contract also embraces a provision that after the indebtedness of the Guyandotte Bank shall have been discharged under the terms of the contract and expenses of liquidation shall have been paid, the surplus, if any, remaining in the control of the liquidating agent shall be turned

over and paid to the Guyandotte Bank to be distributed among its stockholders.

It is averred in the plea that immediately following the execution of said agreement, the liquidating agent took possession and control of all the assets of the Guyandotte Bank and proceeded with the liquidation of its affairs as provided in the agreement, and that at the time of the filing of the plea the liquidating agent continued to be actively engaged in the liquidation of the affairs of the bank; and that by reason of all of these matters the state banking commissioner had no right to appoint the plaintiff as receiver of the Guyandotte Bank or to take any steps toward enforcing "double liability" against the stockholders of the bank, and that the plaintiff therefore has no right or authority to maintain this suit.

The purpose of "double liability" imposed by law upon stockholders of state banking institutions is for the protection of creditors. They have right of action directly against stockholders. "The Legislature may provide, by a general banking law, for the creation and organization of banks of issue or circulation, but the stockholders of any bank hereafter authorized by the laws of this State, whether of issue, deposit or discount, shall be personally liable to the creditors thereof, over and above the amount of stock held by them respectively to an amount equal to their respective shares so held, for all its liabilities accruing while they are such stockholders." Section 6, Article XI, Constitution.

For convenience, in the practical administration of the winding up of the affairs of a state banking institution, the commissioner of banking may cause to be enforced against stockholders of such institution the extra liability which is imposed on them by the Constitution. And if any surplus remains after discharging the indebtedness of the banking institution and the payment of costs of liquidation, the said surplus shall be paid to the stockholders ratably. Code 1931, 31-8-32. But the right thus conferred upon the state banking commissioner is in no wise destructive of the right given creditors by the Constitution. *McClaren* v. *Anderson*, 110 W. Va. 380, 158 S. E. 379.

In the very recent case of *Lawhead* v. *Garlow* (not yet re-

ported), we held: "The constitution and the statutes of our state impose a personal liability on stockholders of banks for debts accruing while they are such stockholders. This is an individual liability of each stockholder to each unsatisfied creditor whose claim accrued during the period when the stockholder owned the stock." It is also settled in this jurisdiction that, "One who at the instance of an insolvent bank pays its creditors, is subrogated to the rights of the creditors to enforce the liability of the bank's stockholders under Constitution, Article 11, section 6." *McClaren* v. *Anderson, supra.*

When the situation is such that it is proper for the receiver of a state banking institution to enforce the extra liability of stockholders, a prior ruling or finding of the state banking commissioner that the particular banking institution is insolvent, is conclusive for the purposes of a suit against the stockholders. *Tabler* v. *Higginbotham,* 110 W. Va. 9, 156 S. E. 751. Where the affairs of an insolvent state banking institution are being liquidated by a receiver appointed by the state banking commissioner, there can be no doubt of either the legality or the propriety of demand being made by suit if necessary upon the stockholders of the bank for their extra liability, if in the opinion of the state banking commissioner such course seems necessary. In such situation the commissioner's receiver has exclusive jurisdiction to collect the assets of such bank. *Charter* v. *Kump,* 109 W. Va. 33, 152 S. E. 780; *Picklesimer* v. *Morris,* 101 W. Va. 127, 132 S. E. 372. But we are confronted with a different situation in the case at bar. The reason for the rule in the two cases last cited fails here because the affairs of the insolvent bank are not being liquidated by a receiver appointed by the state banking commissioner, but the liquidation is being made in pursuance of a contractual arrangement to which the commissioner gave his express approval.

Why should a receiver appointed by the state banking commissioner long after the liquidation agreement was entered into be permitted to enforce the "double liability" against the stockholders of the Guyandotte Bank when he is not charged with the responsibility of liquidating the affairs of the bank? It would seem to be a general proposition that it

is only when the liquidation of a closed bank is in the control of such receiver that he has any justification for enforcing against stockholders the extra liability imposed on them by the Constitution and statute. When the liquidation is being effected by an assignee or purchaser of the assets of the defunct bank, such assignee or purchaser becomes subrogated to the rights of creditors as against the stockholders of the bank (*McClaren* v. *Anderson, supra*) and has right of action against them to enforce such liability, unless the instrument under which such purchaser or assignee acquires its right operates to relieve the stockholders of the defunct institution of their extra liability.

We are of opinion that the matters set forth in the plea in abatement were well pleaded, and that the demurrer thereto should have been overruled. Therefore there will be an order here reversing the decree of the chancellor and remanding the cause for further proceedings not at variance with this decision.

*Reversed and remanded.*