*1242 OPINION.
Mellott :
It has been found as a fact that Behoteguy was justified in concluding, in 1933, that 40 percent of the amount which he had on deposit in the bank when it was closed was the maximum amount which he might reasonably expect to recover. The evidence clearly justifies such finding. As pointed out in American Fork & Hoe Co., 33 B. T. A. 1139, the right to deduct a portion of a debt is provided for by section 23 (j) of the [Revenue Act of 1932,[1] and the Commissioner’s failure to allow a proper deduction may be reviewed. Behoteguy, who was an employee of the B. F. Goodrich Co., kept no formal books of account and hence could not charge off a portion of his bank deposit in the ordinary way. The deduction was claimed in the joint return and respondent does not question the deduction on that ground. Under the circumstances sufficient charge-off was made. Cf. William H. Redfield, 34 B. T. A. 967. The claimed deduction should be and is allowed.
The petitioning corporations contend that since the sole asset of the Credit Corporation, i. e., the capital stock of the bank, became worthless during the taxable year, then their stock in the Credit Corporation likewise became worthless and their investment therein was properly charged off during such year. Inferentially the respondent agrees that if the bank stock became worthless so, also, did the stock of the Credit Corporation, for upon brief he states: *1243 “With respect to the Tights of the Credit Corporation of Akron as a stockholder in the First-Central Trust Co., the facts are only slightly different from those in the Grant and Behoteguy cases.” The difference which he points out is that the Credit Corporation did not file a consent to the plan, as a result of which suit was brought against it to enforce collection of the 100 percent assessment •which had been made against it as a stockholder of the bank. It seems, therefore, that it must be held that if the bank stock was worthless the stock of the Credit Corporation was in the same category ; for such stock of the Credit Corporation clearly had no greater value than the stock of the bank.
The difference pointed out by the respondent and referred to in the preceding paragraph ultimately resulted in a judgment being entered against the Credit Corporation in the amount of $2,256,060. If the Board is wrong in concluding that the stock of the Credit Corporation became worthless because its sole asset became worthless, it probably should nevertheless be held that the corporate holders of such stock were justified in determining that it was worthless in 1933; for the suit which resulted in the judgment of more than two million dollars was imminent and the facts as they were known to exist were such that the petitioners, as such stockholders, had every reason to believe that the very thing which did happen would happen. However, in spite of what has been said, the deficiency determined by the respondent against the stockholders of the Credit Corporation will not be set aside upon this ground; but the contentions made by the respective parties, which they deem to be applicable to all four of the proceedings, will be considered.
The first question to be considered is whether or not the stock of the bank became worthless during 1933. It is unnecessary to restate the facts but a brief reference to some of them will not be amiss.
The bank had not been permitted to reopen after the “bank holiday” of 1933 for the reason that its capital was impaired. Its liabilities exceeded its assets by several millions of dollars. It was in the process of being liquidated by the state bank officials, who, being familiar with all of its affairs, were advising depositors that they could not expect to receive more than 50 or 55 percent of their deposits—an estimate which subsequent events have shown was too high. Stockholders had been formally advised that they would be required to pay an assessment equal to the par value of the stock owned. Creditors and depositors were clamoring for payment of their claims. Such, in brief, was the situation toward the end of 1933. Clearly the stock was then worthless; and sufficient “identifiable events” had occurred to justify the stockholders in forming such conclusion, United States v. White Dental Manufacturing Co., 274 U. S. 398; for *1244 “all reasonable hope and expectation of even* a partial return of capital” was gone. Gowen v. Commissioner, 65 Fed. (2d) 923; certiorari denied, 290 U. S. 687. Cf. Jeffery v. Commissioner, 62 Fed. (2d) 661; In the Matter of Lewis B. Hoffman, 16 Fed. Supp. 391.
Since it has been found as a fact that the stock of the bank became worthless during 1933, the losses were deductible unless some reason exists which requires or justifies some other holding. The respondent contends that such reason does exist, his contention being succinctly stated in his notice of deficiency in one of the proceedings in the following language:
Under the terms of the plan for resumption of business of The First-Central Trust Company of Akron, Ohio, in accordance with which the par value of the shares of stock was reduced from $50.00 to $5.00 per share and there was required the payment of not less than $5.00 of the stockholder’s statutory liability by the purchase of debentures of such bank, a recapitalization results which constitutes a reorganization within the meaning of section 112 (i) of the Revenue Act of 1932. In accordance with the provisions of section 112 (b) (3) of that Act no gain or loss resulted to a stockholder by reason of such reduction in the par value of the stock and the subscription to the capital debentures of the bank.
The portions of the revenue act referred to in the notice of deficiency and other related subsections are shown in the margin.[2]
It will be noted that section 112 applies only in case there have been “sales or exchanges” by the petitioners of their stock in the closed bank. Clearly there were no sales. Indeed the evidence indicates that the stock could not have been sold at any price. No one would have been willing to invest his funds in such stock; for it not only had no value but it was an actual liability to the owner. But the *1245 Commissioner is not contending that any sale of the stock was made so it is unnecessary to discuss this phase of the matter any further.
The theory upon which the deficiencies were determined is: That there was a recapitalization of the bank (sec. 112 (i) (1) (C)) and hence a reorganization; that there were exchanges of stock solely for stock (sec. 112 (b) (8)) in pursuance of the plan of reorganization; and that no gain or loss is to be recognized in connection with such exchange. If, therefore, there were exchanges—if, in the language of the statute, the petitioners exchanged their “stock or securities in a corporation a party to a reorganization, * * * solely for stock or securities in such corporation, or in another corporation a party to a reorganization”—and if in fact there were a reorganization, as such term is defined in the statute, then the deficiencies must be approved. But if there were no reorganization, or if no exchange were made, then the petitioners are entitled to deduct the losses, under section 23 (e) or 23 (f) of the Revenue Act of 1932.[3]
The essence of an exchange is a reciprocal transfer of property— “the act of giving or taking one thing in return for another regarded as an equivalent. Mutual giving and receiving of commodities without the intervention of money.” 'Webster’s. New International Dictionary. The question then is whether or not reciprocal transfers of property were made. We think not. The Credit Corporation made no transfer whatever. It had 31,601 shares of the stock of the closed bank out of the 148,329 shares outstanding. It did not consent to the plan nor to the reduction of the par value of the stock which it owned. It did not consent to the issuance of stock of the resuming bank in its name nor that the escrow agent should hold such stock and ultimately turn it over to the superintendent of banks for sale. It suffered the penalty of having a judgment taken against it for the full amount of the superadded liability which it had as a stockholder. But it did not exchange its stock in the closed bank for stock in the resuming bank.
But did the individual stockholders who consented to the plan make an exchange of their stock in the closed bank for stock in the resuming bank? While this question is more difficult than that *1246 discussed in the preceding paragraph, we are convinced that the answer must be the same, viz., that they did not.
Whether there was a recapitalization of the bank and hence a reorganization under the revenue act need not be decided. The stockholders gave up nothing and nothing was delivered to them. This fact distinguishes the instant proceeding from Coleman v. Commissioner, 81 Fed. (2d) 455, affirming the decision of the Board in W. C. Coleman, 31 B. T. A. 319; for in that case the taxpayer surrendered his stock in one corporation for stock in another corporation. But not so here. The stock of the resuming bank, though issued in the names of the old stockholders as a matter of convenience, was nevertheless owned by the superintendent of banks in his representative capacity. He, as the owner of the assets of the bank, had pledged such shares for the purpose of securing the funds forming the capital and surplus of the resuming bank. True the stockholders had the right, if they chose to exercise it, to purchase the stock of the' resuming bank provided they first paid their superadded liability as stockholders of the closed bank. But the right to purchase such stock had no value in 1933; and any purchasers of it would have subjected themselves immediately to the possibility that an additional assessment might be made against them in the event that it was unable to meet its liabilities. Nor did the consenting stockholders give up their stock in the closed bank or surrender their certificates therefor. If, preadventure, the liquidation of the closed bank should result in the collection of funds sufficient to pay all of its liabilities, the excess, if any, would belong to the stockholders; for the resuming bank was merely the agency selected by the superintendent of banks to aid him in the liquidation—“to perform all or part of such liquidation.”
“Congress intended to exempt from consideration for either profit or loss transfers of property which were really exchanges of capital assets * * *." Pinellas Ice & Cold Storage Co. v. Commissioner, 57 Fed. (2d) 188; affd., 287 U. S. 462. Since there were no exchanges in the instant proceedings, it is not necessary to discuss, nor to decide, whether or not there was a reorganization; for if no exchanges were made it necessarily follows that section 112 is wholly inapplicable.
H. Y. McCord, 31 B. T. A. 342, cited by the respondent is distinguishable upon its facts. In that case a corporation had capitalized $300,000 of its surplus by a stock dividend. Later it reduced its capital stock and distributed to its stockholders its assets in excess of par value of its new capital stock. It was held that the distribution of assets was a division among the shareholders of the corporation’s surplus and hence taxable as a dividend. The conclusion that the change in capital structure from 4,000 common shares to 500 common *1247 and 750 preferred was a recapitalization and hence within the statutory definition of a reorganization was clearly justified under the facts; but it was pointed out that section 112 applies “to exchanges, and there is nothing to indicate whether the word exchange is to be so broadly construed as to include every instance where, irrespective of the terms or circumstances thereof, a stockholder gives up shares and comes out of the arrangement with other shares or something else.” It should be noted, also, that the Board held the assets which were distributed out of the corporation’s surplus were not received by way of exchange for the shares surrendered.
Union C. DeFord, 19 B. T. A. 389, is more nearly analogous on its facts to the instant proceedings. In that case, if the corporation in which the petitioner was a common stockholder had been liquidated, there would have been nothing to be distributed among the common stockholders. Under a plan of reorganization, they were given the right to exchange one share of their old common stock for two shares of the new no par common stock upon payment of an assessment of $20. Persons who were not common stockholders could and did subscribe for and receive two no par value shares in the reorganized company at the price of $20 for the two shares. The Board held that inasmuch as the ownership of the old common stock- did not confer any special benefit or valuable privilege upon the stockholders, their investment in such stock was worthless and might be deducted from gross income. The facts in the instant proceedings justify a similar holding.
[Respondent argues that the payment of $5 for the capital debentures of the resuming bank constituted an amount paid for increasing the capital value of property. None of the petitioners are claiming that the amount so paid constituted a deductible loss during the taxable year so the issue is not before us except in so far as it may affect the issue which has been discussed. The plan, after referring to the assessment which had been made against stockholders, provides: “Payment and collection of said $50 per share shall be made as follows: (a) At least $5 thereof shall be paid by the delivery to the Superintendent of Banks of capital debentures of the resuming Bank purchased and paid for by the stockholder. The debentures so delivered to the Superintendent shall be held by him solely for the benefit of the depositors and creditors of the present Bank and may be disposed of by him at any time. The stockholder who has purchased and paid for the debentures so delivered shall have no interest therein at any time, (b) The balance of the $50.00, or such part as may be necessary shall be collected by the Superintendent three years after the time of resumption of business by the Bank * * *." Whether the purchase of such debentures is a capital transaction or *1248 the payment of a portion of the assessment made against the stockholders of the closed bank, it must nevertheless be held, for the reasons set out above, that there was not an exchange of stock solely for stock and hence section 112 of the revenue act is not applicable.
Reviewed by the Board.

Judgment will be entered under Rule 50.

 SEC. 23. deductions FROM GROSS INCOME.
*******
(j) Bad Debts.—Debts ascertained to be worthless and charged oil within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts) ; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction.

 SEC. 112. RECOGNITION OF GAIN OR LOSS.
(a) General Rule.—upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.
(b) Exchanges Solely in Kind.—
* * * * * * * *
(3) Stock for Stock on Reorganization.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.
*******
(i) Definition of Reorganization.—As used in this section and sections 113 and, 115—
(1) The term “reorganization” means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another'corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in' identity, form, or place of organization, however effected.
(2) The term “a party to a reorganization” includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation.

 SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions :
* * * * * * * *
(e) Losses by Individuals.—Subject to the limitations provided in subsection (r) of this section, in the ease of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—
(1) if incurred in trade or business ; or
(2) if incurred in any transaction entered into for profit, though not connected with the trade or business ; or * * *
(f) Losses by Corporations.—Subject to the limitations provided in subsection (r) of this section, in the case of a corporation, losses sustained during tho taxable year and not compensated for by insurance or otherwise.