E. A. RINEHART, *Receiver, etc. v.* EDITH (PIGOTT) WILFONG

(CC 590)

Submitted January 17, 1939. Decided January 31, 1939.

*Sperry & Snider,* for plaintiff.
*Steptoe & Johnson* and *James M. Guiher,* for defendant.

KENNA, JUDGE:

This proceeding was instituted on the fifth day of February, 1937, before a justice of the peace in Harrison County by E. A. Rinehart, receiver for the Farmers' Bank of Shinnston, against Edith Wilfong, formerly Edith Pigott, a stockholder in the named bank, to recover the double assessment liability upon the par value of defendant's stock. From a judgment in favor of the plaintiff, the defendant appealed, and the Circuit Court of Harrison County certified to this Court the questions

which arose upon its overruling a demurrer to the defendant's "Special Plea No. 1", which set up the defense that the cause of action against the defendant had arisen more than five years preceding the time when this case was instituted, and therefore, a proceeding against the defendant based thereon was barred by statute.

The defendant's special plea sets up three dates, all of which preceded by more than five years the institution of this proceeding, alleging a circumstance which occurred on each of the three dates and concluding with the averment that by reason of the facts alleged the "cause of action" against the defendant, if any, accrued more than five years preceding the bringing of this proceeding.

We are of the opinion that the form of the special plea is sufficient. It affirmatively alleges the facts which are assumed to justify the conclusion that the plaintiff's cause of action accrued more than five years next preceding the institution of this suit, and concludes with a verification. We regard this as sufficient.

The demurrer to the special plea assigned as grounds that the plea was indefinite and contained no allegation of when the statute of limitations began to run, did not set up what constituted notice of the double liability assessment and disclosed on its face that the notification of the stock assessment was not made more than five years preceding the institution of this proceeding.

The demurrer is based upon the further fact that the plea discloses on its face "that the notification of the stock assessment was not made more than five years next preceding the institution of this action." The unavoidable corollary, of course, is that the cause of action did not arise nor accrue until there was notification of the assessment to the defendant, that question being subdivided, should we so hold, into the queries of whether the time of notification is the time that the notices were mailed to the last known address of the stockholder, or is the time when the notice was received by the stockholder; and, in either event, into the further query of whether the receiver of the bank sent out the assessment notices or

notice within a reasonable time after the assessment was laid.

However, the trial court, in its order, we think properly, narrowed the legal question involved, specified the ground upon which the demurrer to the defendant's special plea was overruled, and stated his finding to be that the statute of limitations commenced to run at the time the stock assessment was levied, a date which preceded the institution of the case more than five years.

Following· the clarifying course pursued by the trial court, we are of the opinion that this right of action arose when the double assessment against the stockholders of the Farmers' Bank of Shinnston was laid.

It is rather difficult to justify the stated conclusion, or any other conclusion that might be reached in answer to the pending question, upon the basis of the trend of authority in the reported cases. Both the constitutional and statutory provisions, upon which the double liability of a stockholder in a state bank rests, are at variance to an extent which renders the persuasive application of the reasoning in cases from other jurisdictions rather tedious and complicated. See the opinion in *Cowden* v. *Williams,* 32 Ariz. 407, 259 Pac. 670, 55 A. L. R. 1059, as well as the annotation in the last volume referred to.

While the decisions of the Supreme Court of the United States now classify the obligation of a stockholder of a national bank to discharge a double assessment laid upon his stock as being a contractual liability, the dissenting opinion handed down by Justices White, Brown and McKenna in the case of *McClaine* v. *Rankin,* 197 U. S. 154, 25 S. Ct. 410, 49 L. Ed. 702, 3 Ann. Cas. 500, is otherwise typically illustrative of the divergent points of view as to the primary nature of the liability. That court subsequently held that the liability of stockholders in a national bank accrued at the time the Comptroller of the Currency laid the double assessment.

The most outstanding West Virginia case upon the question of the liability of stockholders in a state bank for the additional assessment is *Pyles* v. *Carney,* 85 W.

Va. 159, 101 S. E. 174. In that case, section 78a (3) of chapter 54, Barnes' Code of 1923, was under consideration. This section prescribed no required procedure either to fix or to enforce the double liability of stockholders in a state bank. Naturally, there was bound to be a time when the liability accrued, but the question of fixing this time did not arise in the *Pyles* case because that proceeding was instituted within five years of the closing of the bank involved. The one essential point decided in the Pyles case, therefore, was the nature of the liability, which, in turn, would determine the applicable statute of limitations. This Court held that the obligation was contractual and consequently that the five-year statute of limitations applied. The obligation was treated as an asset of the bank and as being secondary.

At the time the *Pyles* case was submitted, this Court had established the rule that the liability of the bank's stockholders was to be apportioned upon the basis of the liabilities that the bank had contracted during the time the stockholder in question was the owner of the share. *Benedum v. First Citizen's Bank,* 72 W. Va. 124, 78 S. E. 656; *Clark* v. *Bank of Union,* 72 W. Va. 491, 78 S. E. 785. The court had also indicated that the liability of the stockholder became fixed at the same time that the liability of the bank arose. *Dunn* v. *Bank of Union,* 74 W. Va. 594, 599, 82 S. E. 758, L. R. A. 1915B, 168. Hence, it was essential that prior to the accrual of the right of action against him, his *pro rata* share of the full liability should be ascertained. This was unnecessary under the statute in effect when the Farmers' Bank of Shinnston was closed.

Our statute, in effect since 1929 (Code, 31-8-32) provides that "if it shall appear" that the assets of a closed bank are insufficient to meet its liabilities, the receiver shall, without delaying for any cause, under the authority of the Commissioner of Banking, collect from the several stockholders all sums for which they are severally liable for the benefit of creditors, obviously including the contractual obligation to fully pay their double assessment imposed by Article XI, Section 6 of the Constitution and

Code, 31-4-16. The same section then goes on to provide that should the assets of the banking institution more than suffice to discharge its obligations the stockholders who have paid their extraordinary liability shall, on a pro rata basis, be the first distributees of the surplus.

. Even by this superficial comparison of the two acts, it will be seen that the present act no longer renders it necessary for this Court to place a construction upon it to determine when and how its provisions shall be carried out. The present act provides that the receiver, *under the authority* of the Commissioner of Banking, shall collect the entire amount of their indebtedness from the stockholders without delay. No notice to the stockholders is prescribed. The statute, by clear implication, assumes that the enforcement of the right of action is based upon the order of the Commissioner of Banking because it provides that under his authority the receiver shall institute immediate suit to collect the double assessment from the stockholders. The question naturally arises: When has the receiver the authority of the Commissioner of Banking to institute suits against the stockholders? This authority is the natural outgrowth and sequence of the order of the Commissioner of Banking laying the double assessment, and we hold that that is the time that the right of action accrues and the statute of limitations commences to run, affirming in detail the finding of the trial court.

It has been argued that the cause of action should not accrue and the statute commence to run until the individual stockholder either has received notice of the assessment or that notice has been mailed to the individual stockholder. It will be at once perceived that either rule would likely destroy all uniformity among the stockholders as to the time that the statute of limitations went into operation which would depend in many instances altogether upon the conduct of the receiver. The complications that such a rule might give rise to we think are at once apparent, as well as is the fact that notice of a contractual obligation, even though it rests upon a

contingency, as a generality, is unnecessary. The same reasoning is applicable to the suggestion that a reasonable time after the assessment order by the Commissioner of Banking should be the time that the right of action accrues. This, obviously, would multiply litigation and might lead to the outcome that the particular circumstances affecting the closed bank and each individual stockholder might be open to question in order to determine the time that the right did accrue.

It has also been suggested that the time the bank was closed, to which the assessment laid might be held to relate back, may be the most suitable time to hold that the right accrues. The closing of a bank does not necessarily rest upon the question of its solvency, and to say that to determine the time when the liability of a stockholder to the double assessment arose by relating back the assessment thereof to the time at which the bank closed would be but indulging in a fiction, we think, unnecessarily. Regardless of the reasons for closing the bank, if the Commissioner of Banking is of the opinion that the bank's assets appear to be insufficient to meet its liabilities, then, and then only, the assessment should be laid. Fictions are not to be indulged in when actualities meet the ends of justice.

We are therefore of opinion to affirm the order of the Circuit Court of Harrison County overruling the plaintiff's demurrer to the defendant's "Special Plea No. 1" for the reason that we think that plea adequately sets up facts under which the five-year statute of limitations would bar the plaintiff's right of action.

*Affirmed.*