## UNITED STATES v. PAINE.
### No. 7206.

District Court, D. Massachusetts.
March 1, 1940.

Julian G. Gibbs, Sp. Asst. to Atty. Gen. (Edmund J. Brandon, U. S. Atty., and C. Keefe Hurley, Asst. U. S. Atty., both of Boston, Mass., on the brief), for plaintiff.

Harry H. Ham, of Boston, Mass., for defendant.

SWEENEY, District Judge.

This is an action wherein the United States seeks to recover from the defendant the amount of an alleged erroneous refund of 1932 income taxes and interest.

An agreed statement of facts has been filed by the parties which I adopt as my findings of fact under Rule 52 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c. In addition, I find that the certificate evidencing the ownership of 2,000 shares of stock in the Central Trust Company by the decedent, James L. Paine, has continuously been, and is at the present time, held in the possession of the decedent or the representative of his estate.

Summarized, the facts are as follows: The Central Trust Company ceased doing business on May 10, 1932. On July 23, 1932, the Commissioner of Banks appointed a liquidating agent. That agent, in October of 1932, served notice on the decedent Paine, as well as on all other stockholders, that they would be liable for payment of 100 per cent. of the par value of their stock. Paine was assessed, and later paid the sum of $20,000 in discharge of his liability as the owner of 2,000 shares of stock at a par value of $10.

Simultaneously with the liquidation of the Central Trust Company, the Commissioner of Banks approved a so-called plan of reorganization under which it was planned to reopen the closed bank, "or accomplish a similar result by forming a new bank". As a part of that plan, the reorganization committee, with the approval of the Commissioner of Banks and the Supreme Judicial Court of Massachusetts, extended to the old stockholders of the Central Trust Company three alternative methods of applying their individual liability to stockholders' assessments which the Commissioner had determined to be 100 per cent. of their holdings. The committee offered to the stockholders of the Central Trust Company the following: "You have an election now either (1) to subscribe under the Compromise Plan the full amount of your assessment and receive securities of substantial value, or (2) to subscribe a part of the amount for which you are liable and pay the balance in cash, or (3) to pay your entire assessment in cash and receive nothing."

Paine evidently chose to exercise the first choice above, and subscribed to the extent of his assessment for stock in the new bank. For this subscription he received certificates of beneficial interest in the Central Assets Trust of the face value of $6,666.67, and for the remaining two-thirds of his subscription, amounting to $13,333.33, the County Bank and Trust Company issued in his name 501 shares of stock in that bank. He later converted these 501 shares into 939.63 shares of the Shawmut Association. Upon his claim for refund of taxes erroneously paid by reason of the taxpayer's failing to take his loss in 1932, the Commissioner of Internal Revenue allowed his claim to the extent of $1,246.10 which included interest.

The Government now says that such refund was made through mistake and error, and seeks to recover it. A decision in the case must turn upon the construction of Section 112(b) (3) of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev. Code, § 112(b) (3), which reads as follows: "(3) Stock for stock on reorganization. No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization."

It is the Government's contention that the decedent exchanged stock or securities for stock or securities in a reorganizing corporation or in another corporation a party to the reorganization.

Webster's New International Dictionary states that an exchange is the "act of giving or taking one thing in return for another regarded as an equivalent", and that it relates to a mutual giving and receiving of commodities without the intervention of money.

The statute, under which the Government seeks recovery, denies the right to take a loss where there is an exchange of stock or securities for other stock or securities. Plainly, the decedent Paine did not exchange stock or securities. He or his estate have at all times up to the present had in their possession the certificates of stock in the Central Trust Company, so that it cannot be said that he has exchanged his stock. Under the so-called plan of reorganization, it was not contemplated that stock in the Central Trust Company would be exchanged for the new County Bank and Trust Company stock. Indeed, the plan itself said that the stockholder could subscribe "the full amount of his (your) assessment", and receive stock or securities. The subscription was, in whole or in part, the amount of an assessment which must be met in any eventuality. This can hardly be termed an exchange of stock or securities solely for stock or securities. It seems to have been the intent of the reorganizing committee to do two things: (1) To divert funds collected as a stock assessment into assets of the new corporation, and (2) to give the persons paying the stock assessment the right, insofar as they chose to use it, to become stockholders in the new corporation without further payment of money. In other words, the reorganizing committee offered to give stock in the new corporation not for stock or securities in the old corporation, but for a right, which the Commissioner and the State courts recognized in the assessed stockholder, to direct where his assessment should go. In any event, the stockholders in the Central Trust Company paid the same amount, that is, the 100 per cent. assessment levied against them. It can hardly be said that a direction for the application of money assessed and paid is stock or securities within the meaning of Section 112(b) (3). The decedent stockholder gave up nothing for the stock issued to him. He was liable to pay the full $20,000 assessment against him, and his mere acquiescence in the use of that money for stock to be issued to him was not the exchange of a right or thing that is contemplated in the ordinary use of the word "exchange." See Estate of C. T. Grant v. Com. of Internal Revenue, 36 B.T.A. 1233.

The stock in the Central Trust Company became worthless on the closing of the bank, and hence was deductible as a loss during the income tax year in question.

The plaintiff's requests for conclusions of law numbered 2, 3, and 4 are allowed. Requests numbered 1, 5, 6, and 7 are denied. The plaintiff's motion for judgment is denied. Judgment is ordered to be entered for the defendant.