FARMERS AND MERCHANTS BANK OF MORGANTOWN *v.*
THE BANK OF MASONTOWN *et al.*

(No. 9114)

Submitted April 30, 1941. Decided June 10, 1941.

452

*Joseph V. Gibson* and *Baker & Reeder,* for appellants.
*P. J. Crogan* and *Hunter & Price,* for appellee.

KENNA, PRESIDENT:

This chancery proceeding was brought by the Farmers and Merchants Bank of Morgantown in the Circuit Court of Monongalia County against the Bank of Masontown and a number of individual defendants for the purpose of recovering from the named individuals as stockholders of the Bank of Masontown the double liability imposed upon the stockholders of any bank authorized by the laws of this state under Article XI, Section 6 of the West Virginia Constitution. Defendants appeared and filed a joint and several demurrer and answer to the bill of complaint,

and upon the plaintiff demurring to the answer and there being no material issue of fact, the matter was submitted to the trial chancellor for a final decree upon the pleadings. The defendants' demurrer to the bill of complaint was overruled, the demurrer of the plaintiff to the answer was sustained and, the defendants not desiring to submit testimony, a decretal judgment was entered against each individual defendant, excepting those who were sued as the personal representatives of deceased stockholders, for the full amount of their double liability. The trial chancellor reserved the determination of the matters of law having to do with the liability of the fiduciary defendants.

The assigned grounds of error are as follows: (a) recovery for the alleged liability of the defendants was barred by the statute of limitations when this proceeding was instituted; (b) the Banking Commissioner, under the present statute, is the only person authorized to sue; and (c) conduct of plaintiff in liquidating the affairs of the Bank of Masontown occasioned the loss to a degree which relieves the stockholders of liability to it. There being no material conflict in the allegations of the bill of complaint and those of the answer, they will be dealt with as forming a common chronology.

In the year 1930, the plaintiff, Farmers and Merchants Bank, was engaged in business at Reedsville, Preston County, within a distance of approximately three miles of Masontown where the Bank of Masontown was then doing business. The financial condition of the latter bank became extremely precarious that summer, so that following negotiations which are only alluded to in this record, on the twentieth day of September the two institutions entered into a written contract, under the terms of which the Bank of Masontown transferred outright its liquid assets to the Farmers and Merchants Bank, and executed its collateral note in the amount of four hundred twenty-nine thousand, six hundred dollars and twenty-seven cents and transferred its remaining assets as security. The note was payable six months from date, renewable when due according to the terms of the con-

tract, but under no circumstances to be extended beyond three years from September 20, 1930, without further written agreement between the parties. The contract describes in detail the bills receivable and in general the real estate and tangible personal property transferred as collateral by the Bank of Masontown. On its part, the Farmers and Merchants Bank assumed and undertook to discharge what is commonly called the deposit liabilities of the Bank of Masontown, aggregating four hundred forty-three thousand, three hundred twenty-four dollars and thirty-nine cents.

Although the contract contains no reference in terms to the double liability of the stockholders of the Bank of Masontown, it does contain the following provision:

"The acceptance of said collateral by the party of the second part is upon the warranty of the party of the first part that the same is ample and sufficient for such purpose; and said acceptance is without waiver of any personal legal liability on said note by the first party and/or its stockholders."

The contract and collateral note having constituted a transfer of all of the book assets of the Bank of Masontown, the instrument, nevertheless, contains the following provision concerning the settlement of the indebtedness remaining unpaid after the property has been disposed of and the proceeds applied:

"* * * any deficit or deficiency remaining unpaid after the application of the proceeds of such sale, less the costs and expenses thereof, shall be and remain *and* obligation of the party of the first part and shall entitle the party of the second part to proceed by proper procedure to enforce all legal liabilities therefor."

The agreement was approved by the board of directors of the Farmers and Merchants Bank and of the Bank of Masontown, as well as by the holders of more than sixty per cent of the outstanding capital stock of the latter

bank in a duly held meeting, there being no dissenting vote in any one of the meetings. Upon submission to the Commissioner of Banking, it was approved by him.

On the twenty-seventh day of September, 1930, a contract was entered into between the Farmers and Merchants Bank, on the one part, and a number of other banks in that banking area, on the other part, which, after reciting the agreement entered into between the two banks hereinbefore referred to, the fact of the approval of that agreement by the Commissioner of Banking and that a recent audit since the agreement had been executed disclosed that among the bills receivable of the Bank of Masontown, there had been found one hundred sixty-five thousand, seven hundred dollars of what was regarded as uncollectible paper, went on to stipulate that, subject to the collection by the Farmers and Merchants Bank and a proper credit of collections actually made to be refunded pro rata to the banks constituting the parties of the second part to the agreement, the said banks undertake to cover and to meet the aggregate of one hundred sixty-five thousand, seven hundred twenty dollars of uncollectible paper by making immediate deposits in the Farmers and Merchants Bank of sums allotted to each in that aggregate.

The Farmers and Merchants Bank, in acting as what may be called an interested liquidating agent, fully discharged its assumed obligation, but failed to realize enough in reducing the assets of the Bank of Masontown to cash to equal the amount required to do so.

The record does not disclose at what time the liabilities of the Bank of Masontown were fully discharged, but on February 1, 1937, the Commissioner of Banking, nearly seven years after the contract was executed and almost four years beyond the date therein fixed for the last renewal of the collateral note, mailed Farmers and Merchants Bank a letter, which, after recounting the liquidation of the affairs of the Bank of Masontown for the past six years, stated that as the result of a recent examination and appraisement conducted jointly by the Commissioner of Banking's office and representatives of the Fed-

eral Deposit Insurance Corporation, the conclusion had been reached that the amount which could be realized by the disposing of the remaining assets of the Bank of Masontown would fall at least two hundred thousand dollars short of meeting the note made by it and held by the Farmers and Merchants Bank. The letter from the Commissioner of Banking directs the Farmers and Merchants Bank, on or before April 15, 1937, in order to wind up the affairs of the Bank of Masontown so that its charter could be cancelled and its organization as a banking institution dissolved, to liquidate its remaining assets and enforce the collection of the double liability of its stockholders. A copy of the letter was sent to S. L. Cobun, president of the Bank of Masontown, as an inclosure in a letter sent to him and signed by the Commissioner of Banking.

On February the fifteenth, a vice-president of the Farmers and Merchants Bank addressed a letter to each stockholder of the Bank of Masontown, inclosing copies of the Commissioner of Banking's letter and stated that on March 12, 1937, the remaining assets of the Bank of Masontown would be disposed of at public auction, and that thereafter, in order to meet its unsatisfied indebtedness, the double liability would be assessed against its shareholders and proceedings would be brought for its collection.

On March 12, 1937, at a public sale, the regularity of which is not questioned, the property pledged as collateral was sold, Farmers and Merchants Bank being the highest bidder and purchaser for the sum of forty-one thousand, five hundred dollars.

On March 15, 1937, another letter was mailed to the stockholders of the Bank of Masontown by Farmers and Merchants Bank informing them of the application of all the book assets of the Bank of Masontown to its indebtedness and of the fact that the unpaid balance would require a one hundred per cent assessment of double liability, and informing them that the Commissioner of Banking had directed its collection and that it could be

discharged by payment of twenty-five per cent on the fifteenth of April, May, June and July, 1937.

On July 19, 1937, a like letter was sent informing the stockholders who had not met their double liability assessment that the Commissioner of Banking had instructed the institution of proceedings against them not later than August 1, 1937.

The foregoing papers are all filed as exhibits with the bill of complaint.

The total outstanding stock of the Bank of Masontown was twenty-five thousand dollars face value.

It is undisputed that the Farmers and Merchants Bank is the sole remaining creditor of the Bank of Masontown, and although the answer of the stockholders alleges that it was guilty of misfeasance and neglect in liquidating the assets in its charge, there are no allegations that are specific or that single out any definite transaction due to the handling of which the assets within its control were depleted, so that a replication could form a definite issue of fact. We believe that the demurrer to the answer of the defendants was properly sustained. This disposes of the question presented by assignment (c). The remaining assignments will be dealt with together.

The demurrer to the bill of complaint raises one question regarding the double liability of stockholders in a state banking institution which we do regard as being partly undecided, and that is the question of the statute of limitations—when it begins to run, and how and by whom it may be brought into operation.

The case of *Pyles, Recr.* v. *Carney et al.*, 85 W. Va. 159, 101 S. E. 174, is probably the leading West Virginia case dealing with the required elements of stockholders' double liability—questions which up to that time had been more or less confused. Unfortunately, the opinion in the *Pyles* case fails to differentiate that holding from those in several previous West Virginia opinions, but we believe that a repetition of the questions discussed in the *Pyles* opinion would emphasize the way in which we believe settled practice has clarified a reversal by implication.

The *Pyles* case distinctly holds that the stockholders'

contractual double liability is entirely secondary, and that it is unliquidated until "the amount thereof is ascertained in some manner provided by law,* * *." The case further holds that limitation does not begin to run against the enforcement of the liability until the amount thereof is ascertained and the stockholder notified. This was altered by our subsequent statute which made provision for collection of the entire amount and the refunding of the amount not needed, thus dispensing with the necessity of fixing the amount needed preceding collection. The case holds that the five-year statute of limitations is applicable and, in effect, repeats the statement that it is a conditional asset of the bank and to be treated as such in a receivership proceeding, and limits the aggregate liability attaching to the holders of the shares to the par value of the stock without regard to the number of holders during its life.

In the case of *Lawhead* v. *Adams,* 113 W. Va. 604, 609, 169 S. E. 330, the principle is laid down that the assignee or purchaser of the assets of an insolvent banking institution is subrogated to the right to enforce the double liability of stockholders in the institution, unless the instrument under which the assignee holds operates to relieve such stockholders from their responsibility. See also, *Lawhead* v. *Edwards,* 114 W. Va. 597, 172 S. E. 895.

From the foregoing, it would seem quite evident (1) that the liability is a transferable asset of the bank; (2) that the five-year statute of limitation applies; (3) that the statute begins to run when the conditional liability is converted by an official ascertainment of the bank's fiscal conditions, and a finding that there is an existing necessity for the collection of the double liability in order to meet the bank's indebtedness, into a definite, fixed responsibility. This Court so held in the case of *Rinehart* v. *Wilfong,* 121 W. Va. 24, 1 S. E. (2d) 174, 176, and fixed the ascertainment of the Commissioner of Banking as the time when an unliquidated secondary liability became a fixed, primary obligation for the full amount. We see nothing contained in the controlling statute that alters the enumerated principles.

The questions now to be determined are (a) is a receivership of the banking institution an indispensable method of procedure in order to give the Commissioner of Banking's ascertainment a quasi judicial effect, and, if not (b) in what manner is the Commissioner of Banking to make known his determination? The *Wilfong* case establishes that in a receivership proceeding, the authority of the Commissioner of Banking, which is necessary under the statute to justify the receiver's proceeding to collect the double liability, is exercised by the issuance of the Commissioner's order "laying the double assessment."

There is no language in either the Constitution or in the statute indicative of a purpose to limit the collection of double liability to an assessment thereof by the Commissioner of Banking made during a receivership of the bank, although the statute deals with that situation expressly. Apparently, it was the legislative purpose to leave all legitimate methods of conducting its affairs open to a banking institution, whether by merger, consolidation, liquidating agencies or otherwise, without impairing the asset of double liability. Although the double liability of stockholders in banking institutions is now practically abolished (1937 Amendment to Art. XI, Sec. 6, Constitution; Chapter 9, Acts of 1939; 1939 Supplement, 31-4-16), due to the stringent regulation of our banking system, its salutary and stabilizing effect upon our methods of conducting business was apparent for years after its adoption.

Both during receivership under the statute and during the ordinary operation of West Virginia banking institutions in general, the Commissioner of Banking is charged with the inspection and supervision of their affairs. His instructions or orders in many ways can be ignored only by chancing that he is exceeding his powers. Our statute makes no provision for the keeping of the records of his office, but, of course, contains provisions which attach high importance to his official conduct. We have no hesitancy in stating that his official conduct in imposing the assessment under consideration must amount to writ-

ten notification of the bank whose stockholders are required to meet the double liability of the fact that the bank's affairs have been found by the Commissioner of Banking to be in a condition which makes its collection necessary. That assessment being a liquidated asset of the bank, it would then be the duty of the commissioner to require that to be done. This being so, we have no difficulty in affirming our holding in the *Wilfong* case, and in going further and saying that the Commissioner of Banking's order in this instance is his direction to the Farmers and Merchants Bank to collect the double liability in his letter to it dated February 1, 1937.

The Legislature in its various enactments dealing with the double liability under Article XI, Section 6 of the Constitution prior to its recent amendment, never undertook specifically to limit the enforcement of that obligation in point of time. Neither did the Legislature undertake to definitely define the circumstances under which the limitation would commence to run. Their hesitancy to directly impose a limitation governing the constitutional liability is commendable, and while the Commissioner of Banking, as the representative of the creditors, has power to act in the premises, this Court has not the right to restrict the running of the statute to those instances in which the Commissioner is actively engaged. Under the constitutional provision, the right is conferred directly upon the creditors, and while the act in effect prior to the amendment, we believe, was framed for the purpose of conferring the power upon the Commissioner of Banking to convert an unliquidated obligation into a liquidated liability by laying an assessment, although the case before us is governed by principles that arise under circumstances to which that power relates, we are obliged to recognize that a right of action might be vested in others under different circumstances. When the statute of limitations would commence to run against the remedy of such others is not before us.

For the foregoing reasons, the decree complained of will be affirmed.

*Affirmed.*