HELVERING, Com'r of Internal Revenue,
v. SMITH.

No. 5011.

Circuit Court of Appeals, Fourth Circuit.

Dec. 23, 1942.

Willard H. Pedrick, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

James S. McCluer, of Parkersburg, W. Va., for respondent.

Before SOPER and DOBIE, Circuit Judges, and COLEMAN, District Judge.

SOPER, Circuit Judge.

In 1936 Levin Smith, the taxpayer, was required to pay an assessment on bank stock held by him in a West Virginia bank, and later in that year and again in 1937 and in 1938 portions of the assessment were returned, so that in 1938 the precise amount of his loss in this respect seems to have been finally and definitely ascertained. He deducted his net payment in 1936 from his income in making up his tax return for that year, and added the amounts returned to him in 1937 and in 1938 to his income in making up his returns for those years. He now seeks a redetermination of his income for the years 1937 and 1938, claiming an overpayment of tax on the theory that the refunds received by him in those years did not constitute income because he received no tax advantage from the deduction taken in 1936. The Board of Tax Appeals adopted this view and the Commissioner has brought this petition for review.

The Central Bank and Trust Company of Parkersburg, West Virginia, was closed by order of the State Banking Department and a receiver was appointed in the year 1936 under the provisions of the West Virginia Statutes. Section 3138 of the West

Virginia Code of 1937 provides that each stockholder of any banking institution of the State "shall be liable to the creditors of the banking institution, on obligations accruing while he is a shareholder, to an amount equal to the par value of the shares of stock held by him."

Section 3214 gives authority to the State Commissioner of Banking to appoint a receiver of any insolvent banking institution of the State, and requires the Commissioner of Banking to make a complete inventory of the assets and liabilities of the institution. The receiver is given power under the authority of the Commissioner to enforce against the stockholders any liability incurred by them and existing in favor of the creditors, and to collect from the stockholders any sums for which they are liable. The section further provides:

"If it shall appear that the assets of such insolvent institution or other corporation are not sufficient to pay in full all of its creditors and depositors, without waiting to administer the assets of such institution or other corporation, or delaying for any other cause, in the same suit or in separate suits, to be forthwith instituted in the same or any other jurisdiction in his name, the receiver, under the authority of the commissioner of banking, shall collect from each of the several stockholders of such institution or other corporation all sums for which they are severally liable to such institution or other corporation, for the benefit of its creditors.

* &ast; &ast; &ast; &ast; &ast;

"If the assets of any such institution or other corporation, including any sums collected from the stockholders, shall more than suffice to pay all of the creditors of such institution or other corporation who have presented and proved, or caused to be allowed, their several demands, the surplus shall be disbursed as follows: First, in the case of a banking institution, to the stockholders, who have paid in any sums upon their extraordinary liability as stockholders, pro rata up to the respective amounts paid by each of them. Second, if anything shall remain thereafter it shall be paid to the stockholders of the institution or other corporation, in proportion to the number of shares owned by them respectively."

In conformity with this statute, the taxpayer was required in 1936 to pay to the receiver of the bank $21,699, i. e., the full amount of his possible liability as a stockholder of the bank. Of this sum $6,509.70

was returned in the same year. In filing his return for 1936 he claimed a deduction of the remainder of $15,189.30; and the allowance of this deduction resulted in a net loss of $9,624.71 for the year and no tax liability. Had the deduction of $15,189.30 not been taken, the taxpayer's return would have shown a net gain for the year of $5,564.59.

In 1937 the taxpayer received a refund of the assessment in the amount of $5,424.-75 and reported the same as income for that year; and in 1938 he received a refund of $3,688.83 and likewise reported it as income. It thus appears that the net loss suffered by the taxpayer as a result of his stockholders' liability was $6,075.72. This loss exceeded the gain received by the taxpayer in 1936, disregarding the assessment paid in that year by the sum of $511.-13, so that the taxpayer gained no tax advantage by the deduction taken in that year.

The Board's decision was based on the theory that if a deduction of a loss in a prior year did not effect an offset to the taxable income in that year, then a recovery of the loss in a subsequent year should not be included in gross income. We took a contrary view as to a loss from bad debts in Helvering v. State-Planters' Bank & Trust Co., 4 Cir., 130 F.2d 44, decided August 18, 1942, when we held that if a bad debt is charged off as worthless in a taxable year under the provisions of the statute, 26 U.S.C.A. Int.Rev.Code, § 23(k), the fact that the chargeoff did not result in tax benefit cannot be considered in connection with the taxability of a subsequent collection of the debt as income, since the taxability is determined by the chargeoff and each year must be regarded as an independent unit for income tax purposes.

The taxpayer accepts this decision as a correct exposition of the Revenue Act of 1936, C. 690, 49 Stat. 1648, 26 U.S.C.A. Int. Rev.Acts page 819 et seq., but relies upon the subsequent enactment of the Revenue Act of October 21, 1942, § 116, 26 U.S.C.A. Int.Rev.Acts, whereby § 22(b), relating to exclusions from gross income, was amended so as to exclude income attributable to the recovery of a bad debt to the extent that the deduction previously allowed on account of the bad debt did not result in a reduction of the taxpayer's tax; and such amendment was made effective retroactively as if it had been a part of the Act of 1938 or any prior revenue act at the date

of its enactment. The taxpayer contends that the assessment of his stockholder's liability gave rise to a bad debt within the terms of § 23 (k) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 828; but the Commissioner says that the assessment did not create a bad debt payable to the taxpayer, but merely caused a loss to the taxpayer deductible under § 23(e) of that Act, and, therefore, the case must be decided in accordance with the principles enunciated in the State-Planters Bank decision.

■ We think, however, that the case does not turn on the distinction between a loss and a bad debt, allowed as deductions from gross income by these respective sections of the Act. Each party to the instant controversy assumes that the deduction of $15,189.30 taken in 1936 was properly allowable in that year, and from that premise proceeds to apply that section of the statute which fits his understanding of the facts; but that premise is not tenable, for it seems clear, when the provisions of the West Virginia banking statute are considered, that the assessment laid by the West Virginia authorities in 1936 did not give rise to an allowable deduction in that year under either of the conflicting theories. It will have been noticed that under § 3214 of the West Virginia Code the receiver of an insolvent bank, believed to be insolvent, is under no obligation to ascertain the precise amount needed from the stockholders to pay the creditors and depositors in full before he levies upon each stockholder an assessment in the amount of the par value of his stock. On the contrary, if it appears that the bank is insolvent, the receiver is directed to collect from the stockholders the full amount for which they are liable for the benefit of the creditors "without undertaking to administer the assets of such institution"; and if the assets, including any sums collected from the stockholders, shall more than suffice to pay the creditors, the surplus shall be disbursed first to the stockholders pro rata upon the amounts paid by each of them. See Farmers & Merchants Bank v. Bank of Masontown, W.Va., 15 S.E.2d 569; Rinehart v. Wilfong, 121 W.Va. 24, 1 S.E.2d 174.

This procedure seems to have been followed in the collections from the taxpayer and other stockholders of the Central Bank & Trust Company of Parkersburg in this case; and the inconclusive and temporary character of the assessment speedily became apparent. In the very year in which payment of the full stockholders' liability was exacted, thirty per cent of the monies paid by them was returned; and in the successive years 1937 and 1938 twenty-five per cent and seventeen per cent of the assessment, respectively, were returned; so that in the end, assuming that the assets were completely administered in 1938, seventy-two per cent of the amounts paid in were returned to the stockholders and their loss was reduced to twenty-eight per cent of the full liability. Obviously the process was not finished and the loss was not completely liquidated or ascertained before the year 1938.

■ While it may be said, strictly speaking, that a deduction for a bad debt is allowable under the statute when its worthlessness is "ascertained", while a deduction for a loss is allowable only when it is actually "sustained", a loss of either sort must be shown or proved by some "identifiable event", or by attending circumstances which support an ascertainment of worthlessness. Bartlett v. Commissioner, 4 Cir., 114 F.2d 634.

Regulations 94 under the Revenue Act of 1936 made provision for the deduction of bad debts and losses by individuals in part as follows:

"Art. 23(k)—1. Bad Debts. * * *

"If all the surrounding and attending circumstances indicate that a debt is worthless, either wholly or in part, the amount which is worthless and charged off or written down to a nominal amount on the books of the taxpayer shall be allowed as a deduction in computing net income. There should accompany the return a statement showing the propriety of any deduction claimed for bad debts. * * * Before a taxpayer may charge off and deduct a debt in part, he must ascertain and be able to demonstrate, with a reasonable degree of certainty, the amount thereof which is uncollectible. Any amount subsequently received on account of a bad debt or on account of a part of such debt previously charged off and allowed as deduction for income tax purposes, must be included in gross income for the taxable year in which received. * * *"

"Art. 23(e)—1. Losses by individuals. * * *

"In general losses for which an amount may be deducted from gross income must be

evidenced by closed and completed transactions, fixed by identifiable events, bona fide and actually sustained during the taxable period for which allowed. Substance and not mere form will govern in determining deductible losses. Full consideration must be given to any salvage value and to any insurance or other compensation received in determining the amount of losses actually sustained. See section 113 (b)."

In harmony with Article 23(k) of these Regulations the Board of Tax Appeals has uniformly held that depositors of insolvent banks are not justified in taking a deduction for any part of their deposits as bad debts during the process of liquidation until it is reasonably certain that a loss has been sustained and the amount of it has been ascertained. Eastern New Jersey Power Co. v. Commissioner, 37 B.T.A. 1037; Van Smith Bldg. Material Co. v. Commissioner, 16 B.T.A. 875; Estate of C. T. Grant v. Commissioner, 36 B.T.A. 1233. And the courts have held that neither the whole nor a part of a debt may be charged off as worthless until the taxpayer is able to demonstrate with a reasonable degree of certainty the amount that is uncollectible. Johnson, Drake & Piper, Inc., v. Helvering, 8 Cir., 69 F.2d 151; Bingham v. Commissioner, 2 Cir., 105 F.2d 971; Hadley Falls Trust Co. v. United States, 1 Cir., 110 F.2d 887. Likewise, the courts have uniformly held that losses by individuals may not be deducted unless they grow out of closed and completed transactions in which all reasonable possibility of gain has been exhausted. Mahler v. Commissioner, 2 Cir., 119 F.2d 869; Deeds v. Commissioner, 6 Cir., 47 F.2d 695; Burdan v. Commissioner, 3 Cir., 106 F.2d 207; Jones v. Commissioner, 9 Cir., 103 F.2d 681.

Obviously these rules were not recognized and applied, when the deduction of $15,149.30 was taken and allowed for the year 1936. The stipulation of facts upon which the case was submitted to the Board contained no indication that the taxpayer then had reason to believe that the deduction represented the actual ascertained extent of his stockholder's liability. On the contrary, the return to him of substantial amounts in three successive years showed quite clearly that in accordance with the statutory practice in West Virginia the original assessment was tentative only, and that the amount of the taxpayer's liability would not be fixed until the administration of the assets of the bank had been completed. In short, the case was tried below on the wrong theory and the taxpayer's liability in suit for the years 1937 and 1938, as well as for the prior year 1936, cannot be correctly computed until by reexamination of the facts the Board finds in what year the amount of the taxpayer's loss was sufficiently ascertained to justify its deduction under the well established rules. The decision of the Supreme Court in Burnet v. Sanford & Brooks Co., 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383, is not opposed to this conclusion, for in that case the operation of the taxpayer's business at a net loss in the year in which the deduction was taken was definitely established. On the contrary, the fundamental principle of that decision, that each tax year must be considered a separate unit for the computation of gains and losses, is observed.

The course to be followed now is illustrated in the recent decision of this court in Greenwood Packing Plant v. Commissioner, 4 Cir., 131 F.2d 787, where it was held that the failure of the taxpayer to report income received in a certain year did not justify its inclusion in the income of a subsequent year but required the correction of the taxpayer's earlier return; and it was pointed out that under the Act of May 28, 1938, Ch. 289, § 820, 52 Stat. 581, 26 U.S.C.A. Int.Rev.Code § 3801, correction of such errors by an adjustment under the provisions of the Act is permissible. Since the pending case was tried by the Board upon the assumption of the existence of a fact which the record contained no substantial evidence to support, we must remand the case for further proceedings in conformity with the procedure approved in Helvering v. Rankin, 295 U.S. 123, 131, 55 S.Ct. 732, 736, 79 L.Ed. 1343, where it was said: "Unless the finding of the Board involves a mixed question of law and fact, the court may not properly substitute its own judgment for that of the Board. If the Board has failed to make an essential finding and the record on review is insufficient to provide the basis for a final determination, the proper procedure is to remand the case for further proceedings before the Board." See, also, Underwood v. Commissioner, 4 Cir., 56 F.2d 67, 73.

Reversed and remanded.