GRENADA BANK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 54900.   Promulgated August 29, 1935.

*Nelson E. Taylor, Esq.,* for the petitioner.
*E. A. Tonjes, Esq.,* for the respondent.

1292

OPINION.

TURNER: A motion has been filed to amend the petition to conform to the proof offered at the hearing. The amendment proposed alleges that the principal amount embezzled in 1928 was $15,750, instead of $9,960, as originally alleged. The respondent has based the discussion in his brief on the figures shown in the proposed amendment and the motion to amend has been granted.

The petitioner contends, first, that the issue is one of bad debt deductible in full in the year 1928, and not a question of losses in the years in which the acts of embezzlement occurred. On the facts

here this contention is resolved against the petitioner. A loss by embezzlement within the meaning of the statute and the regulations is not a bad debt, but is a loss sustained in the year of the embezzlement. *First National Bank of Sharon* v. *Heiner*, 66 Fed. (2d) 925; *Gottlieb Realty Co.*, 28 B. T. A. 418; *William S. Phillips*, 24 B. T. A. 98; *Peterson Linotyping Co.*, 10 B. T. A. 542; *Parker Wire Goods Co.*, 8 B. T. A. 448. Some of the cases cited have been considered in the petitioner's reply brief, in which care has been taken to point out that in the cases so cited there was no promise on the part of the embezzler to repay the amounts taken. In that respect, the facts in those cases are no different from the facts in this case. In several of the cases cited, the embezzler repaid some portions of the money taken, just as Leigh did here. It is alleged in the petition and suggested in the brief that Leigh did promise to repay. We have examined the record carefully and find no proof of any promise on Leigh's part in that respect. It further appears that the petitioner at no time set up a charge on its books of any amount against Leigh personally. The petitioner's cashier was specifically questioned on this point. On these facts this case is readily distinguishable from *Douglas County Light & Water Co.* v. *Commissioner*, 43 Fed. (2d) 904; and *Ledger Co.* v. *United States*, 37 Fed. (2d) 775. In each of those cases the taxpayer accepted the embezzler's notes to cover the amounts embezzled and the notes were regularly entered on the taxpayer's books of account. When it was determined that no further collection on the notes could be made, the unpaid amounts were charged off and the deductions claimed. Under those circumstances, the courts held that a deduction for bad debts was proper. The facts in this case are altogether different.

In arriving at the amount of the deduction in respect to these embezzlements, the petitioner seeks to include as a part thereof certain amounts paid as interest on the certificates of indebtedness which were utilized by Leigh in covering up his defalcations on the books of the company. The mere fact that Leigh failed to record the certificates of indebtedness on which the particular interest payments were made and this failure to so record the certificates served as the cloak to cover his defalcations for a time, can in no way change the interest payments on the petitioner's obligations into losses or bad debts. The deduction of interest payments is governed by section 23 (b) of the Revenue Act of 1928, and the items paid as interest on the certificates here in question may not be included as a part of the losses sustained as a result of the embezzlements by Leigh.

The facts show that, beginning in 1927 and continuing into 1928, Leigh embezzled various sums of money from the petitioner's funds totaling $58,677.09. Of this amount, $42,927.09 was taken in 1927

and $15,750 in 1928. The facts further show that petitioner's total recoveries amounted to $48,500, disclosing an actual loss to petitioner of $10,177.09. The petitioner takes the position that the income tax statute is silent with reference to the allocation of recoveries in such cases, and under those circumstances, by applying the law of Mississippi, the recoveries are to be applied as an offset against the amounts first embezzled, thereby making the total actual loss deductible in the year 1928.

In arriving at the loss deduction for 1928, the respondent has followed a ruling of long standing in the Bureau of Internal Revenue. In 1922, in such a case as this, the following ruling was made:

*Held*, that an amount ascertained to have been lost through embezzlement is allowable as a deduction from gross income for the year or years in which the funds were so converted, and that any sum recovered should be allocated to each year in which the funds were embezzled in the proportion that the sum so converted in a particular year bears to the total amount embezzled. The amount ascertained to have been lost is the amount embezzled, reduced by whatever sum has been recovered on account of the conversion or the reasonable value of the claim against the embezzler or his bondsmen at the time the conversion was discovered * * *. [I. T. 1470, published in Cumulative Bulletin I–2, July–December, 1922, p. 60.]

Under section 234 (a) (4) of the Revenue Act of 1926 and section 23 (e) of the Revenue Act of 1928, losses sustained during a taxable year are deductible, but only to the extent that they are not compensated for by insurance or otherwise. The losses sustained by this petitioner were $42,927.09 in 1927 and $15,750 in 1928. The facts show that these losses were compensated for by recoveries to the extent of $48,500 and that the recoveries were made with reference to the total embezzlements for the two years and not with reference to specific items embezzled or the total items embezzled for either year. The apportionment of the recoveries in the manner shown discloses a loss deduction for the taxable year which is in direct proportion to the gross loss sustained in that year and, in our opinion, is the loss sustained during the year and not compensated for by insurance or otherwise, allowed by the statute as a deduction.

But even if the reasoning of the petitioner be adopted and it is said that the recoveries are properly applicable to the first amounts embezzled and we thereby conclude that the total loss not compensated by insurance or otherwise was sustained in 1928, we are still of the opinion that the action of the respondent in apportioning the net or actual loss between the two years is in keeping with provisions of the statute.

In section 214 (a) (6) of the Revenue Act of 1921 it was provided that losses such as we have here were to be deducted as of the taxable year in which sustained "unless, in order to clearly

reflect income, the loss should, in the opinion of the Commissioner, be accounted for as of a different period." In section 200 (d) of the Revenue Act of 1924, it was provided that "the deductions and credits provided for in this title shall be taken for the taxable year in which paid or accrued, or paid or incurred * * * unless, in order to clearly reflect the income, the deductions or credits should be taken as of a different period." With reference to this provision of the Revenue Act of 1924, the Committee on Ways and Means of the House of Representatives, in its report pointed out that the provision previously cited from the Revenue Act of 1921 had been omitted from the bill and the provision just quoted had been inserted for the purpose of extending that provision to all deductions and credits instead of leaving it as it was, applicable only to deductions in respect to losses. This same provision, which first appeared in the Revenue Act of 1924, under the explanation made by the Committee on Ways and Means, was continued in section 200 (d) of the Revenue Act of 1926 and section 43 of the Revenue Act of 1928. It is thus apparent that the statute authorizes the Commissioner to allocate the loss deduction between the years 1927 and 1928 if such action is necessary for a clear reflection of income.

It is our opinion that the respondent's method of computing the loss deduction for 1928 in respect to Leigh's defalcations is correct and proper, and is essential to a clear reflection of the petitioner's income for that year.

*Decision will be entered under Rule 50.*