EASTERN NEW JERSEY POWER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 88566. Promulgated June 10, 1938.

*Richard W. Wilson, Esq.*, and *George Huling, C. P. A.*, for the petitioner.

*E. M. Woolf, Esq.*, for the respondent.

OPINION.

HARRON: There is no dispute that petitioner charged off on its books the debt as worthless. There is no question that the item was a debt. A bank deposit creates a debtor-creditor relation. The sole question is whether the petitioner's ascertainment of worthlessness of the debt occurred in the same year that the debt in fact became worthless. The question here is a fact question upon which the burden of proof is on the petitioner.

A taxpayer is not expected to be too optimistic. *United States* v. *White Dental Manufacturing Co.*, 274 U. S. 398, 403. Neither should he be too pessimistic when claiming deductions for bad debts. He "must make a reasonable investigation of the facts and draw a, reasonable inference from the information thus obtainable." *Sherman, & Bryan* v. *Blair*, 35 Fed. (2d) 713, 715. The facts are that at the end of 1933 petitioner had received 10 percent payment of the deposit; the bank had reopened and depositors had been given an equitable interest in preferred stock of the bank having a par value of $10 per share and redeemable at $190. The petitioner received under the reorganization plan, a right, evidenced by preferred stock participation certificates, to receive preferential payments out of the orderly liquidation of certain assets and earnings of the bank up to the full amount of its unpaid deposit. Petitioner also received the

voting rights that the preferred stock carried. It appears that there was no time agreed upon within which the unpaid deposits were to be paid off. The agreement of May 26, 1933, was for an undetermined period.

The payments which petitioner had a right to receive were to be made from the orderly liquidation of certain assets and from earnings. No evidence is presented in this proceeding as to what comprised the assets to be liquidated, the value thereof in 1933, nor the relation of assets to liabilities. Petitioner's officer who testified in this proceeding stated that he was unable to obtain any information from the bank as to what amount of deposits might ultimately be paid. Lacking any information as to the future probabilities, petitioner's officers concluded at the end of 1933 that the debt was uncollectible and wholly worthless.

We do not have here a situation where a creditor is given stock or other property in *settlement* of his claim. Cf. *Sunflower Packing Corporation*, 2 B. T. A. 1104; *Allie M. Turbeville*, 31 B. T. A. 283. Petitioner here received an equitable interest in preferred stock held by a trustee, the voting rights of the preferred stock, and the right to receive payments on account of the unpaid deposit out of both liquidation of certain assets and future earnings. While participation certificates were received, the preferred stock was not received. While the participation certificates were quoted on the market, there is not any substantial evidence before us as to their fair market value in 1933 and petitioner has not made claim for a partial loss. It may be that petitioner could have sold the certificates, but it did not, and it appears that the certificates were not traded in. The intent of the plan under which the certificates were issued was to gradually redeem the stock against which the certificates were issued. Under these facts we do not believe that the issuance of the certificates in 1933 constituted a "closed transaction" upon which petitioner could determine that the claim was worthless at the end of 1933.

Under the plan which petitioner agreed to with other depositors, the Asbury Bank was reopened and carrying on business at the end of 1933, with the approval of the New Jersey State Commissioner of Banking. Unpaid depositors were to be paid, in full, if liquidation proceeds and earnings were sufficient, over an indefinite period of time. It appears that the claim of petitioner had possibilities of being paid in part if not in full, even though collection appeared to be a slow prospect. Therefore, we do not believe that, merely because the possibilities of collection of the claim depended upon the success of liquidation of certain assets and future conduct of business, the petitioner could conclude that the claim was worthless at the end of 1933. A creditor may not charge off as worthless a claim merely because collection may be slow. The issue before us requires proof

as to the value and nature of the assets to be liquidated, prospects of liquidation, the relation of assets to liabilities. This proof has not been presented by the petitioner. Cf. *Equity Silk Corporation*, 21 B. T. A. 1114. The explanation of the lack of any such proof as described above is that petitioner's officers were unable to obtain information as to the financial condition of the bank. We accept the explanation as being the true situation, for it appears that constant and reasonable efforts were made to obtain such information. We must, therefore, conclude that petitioner's officers were unable to *ascertain* that the petitioner's claim was worthless at the end of 1933 and we have found this to be a fact. Cf. *Frank D. Stranahan*, 14 B. T. A. 1405; *Parker* v. *United States*, —— Fed. Supp. —— (U. S. Dist. Ct., E. Dist. Pa., Mar. 10, 1937). Under the views expressed by the court in the *Parker* case, we do not believe this petitioner could be held to know what the financial condition of the Asbury Bank was at the end of 1933.

We believe this proceeding comes within the scope of the principle set forth in *Van Smith Building Material Co.*, 16 B. T. A. 875. In that case a bank that had been closed had reopened in the year in which the taxpayer claimed a loss for unpaid bank deposits. The facts showed that the bank there had slow accounts receivable and it was hoped that the financial condition of the bank would improve. We held that the taxpayer could not ascertain at the end of the taxable year what percentage of the bank deposits might be uncollectible and we denied the claimed loss. The facts in this proceeding are similar, in our opinion. Petitioner here claims that the debt of the bank to it was entirely worthless at the close of the taxable year. Petitioner has not urged nor offered proof to show that the debt was partially worthless. Cf. *Ross* v. *Commissioner*, 72 Fed. (2d) 122.

For the reasons given above, we conclude that the debt in question was not worthless at the close of 1933 and respondent's determination is, therefore, sustained.

*Decision will be entered for the respondent.*