SWASTIKA OIL AND GAS COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 90861.   Promulgated October 24, 1939.

*M. J. Sporrer, Esq.,* and *Harry C. Kinne, Esq.,* for the petitioner.
*E. G. Sievers, Esq.,* for the respondent.

### OPINION.

SMITH: This proceeding is for the redetermination of an income tax deficiency of $7,319.83 and an excess profits tax deficiency of $2,625.45 for the fiscal year ended October 31, 1935. Petitioner alleges that the respondent erred in including in its income an amount of $53,146.52 which it received during the taxable year in settlement of a contested lawsuit, and in disallowing the deduction of bad debts in the amount of $2,665.51.

Petitioner is a corporation, engaged in the production and sale of oil and gas in Muskegon County, Michigan.

On April 19, 1929, petitioner and J. D. Wrather entered into a contract, to which there were several supplements, whereby Wrather agreed to build an oil refinery in the vicinity of lands covered by certain oil and gas leases which the petitioner owned. It was proposed that a corporation would be organized to operate the refinery. Petitioner agreed to sell to Wrather or the corporation at a certain price and for a period of two years (extended by supplemental agreement to three years) a minimum quantity of oil if and when produced at its wells. It was further agreed that when the earnings of the refinery should become equal to the cost of its construction, which by supplemental agreement was fixed at $75,000, 35 percent of the corporation's capital stock would be assigned to the petitioner without further consideration.

The proposed corporation was organized May 17, 1929, under the name of Michigan Central Refining Co., with a capital stock of $300,000, consisting of 30,000 shares of the par value of $10 per share. Thereafter, Wrather assigned to the corporation all of his interest in and obligations under the contract of April 19, 1929, in exchange for 30,000 shares of the capital stock of the corporation.

The refinery was completed during 1929 and was operated by the Michigan Central Refining Co. until about April 30, 1930. On or about that date the directors and principal stockholders of the com-

pany fraudulently conveyed and assigned, without adequate consideration, all of the company's assets to another corporation, the Roosevelt Oil Co., which they had organized for that purpose without petitioner's knowledge or consent. Thereafter, the refinery was moved to Mt. Pleasant, Michigan, where it was operated by the Roosevelt Oil Co., and the Michigan Central Refining Co. was dissolved.

On May 19, 1931, petitioner entered suit against the Michigan Central Refining Co., its individual stockholders and directors, the Roosevelt Oil Co., and others, alleging that the conveyance of the assets of the Michigan Central Refining Co. to the Roosevelt Oil Co., and the dissolution of the former company, were false and fraudulent and invalid; that it (the petitioner) was entitled to 35 percent of the capital stock of Michigan Central Refining Co. and 35 percent of the profits of that company in accordance with the contract of April 19, 1929.

On January 23, 1935, the Circuit Court of Muskegon County, Michigan, handed down an opinion in which it upheld substantially the petitioner's allegations. The court decreed that the dissolution of the Michigan Central Refining Co. and the sale of its assets were null and void and ordered that the company be reinstated and that there be assigned to it all of the assets of the Roosevelt Oil Co. It was further ordered that there be issued to the petitioner 10,480 shares, and to others, as the defendants might direct in writing, 16,470 shares of the capital stock of the Michigan Central Refining Co., and that an accounting of the profits of that company and the Roosevelt Oil Co. be made to determine the amount thereof to which petitioner was entitled under the contract of April 19, 1929. The final decree of the court was entered February 28, 1935.

In its opinion the court said:

It appears clear that at the time of the fraudulent sale of the Refinery's assets to Roosevelt, the defendant Wrather's account for the erection of the Refinery equipment at Muskegon had been paid down to $39,000.00, by reason thereof plaintiff was entitled to one-half of the capital stock in the Refinery, in accordance with the Swastika-Wrather contract, and that after the fraudulent sale and subsequent to the removal of the Refinery equipment to Mt. Pleasant, the Refinery under the name of Roosevelt Oil Company, paid to Wrather his entire account for the erection of the refinery equipment at Muskegon.

The court further said:

It is also my opinion that since the sale of the Refinery, it, operating under the name of Roosevelt Oil Company, has made a large profit which the defendants Wrather and Caldwell have been and are attempting to conceal from Plaintiffs and its representatives, and Warren and Kinne, and plaintiff Swastika, and Warren and Kinne are entitled to an accounting thereof and therefor.

The defendants prepared to take an appeal to the higher court but later agreed to settle the case out of court. Pursuant to such agree-

ment the petitioner in September 1935 received a cash payment of $80,000 in full settlement of its claims. Petitioner had incurred legal expenses of $26,853.48 in connection with the suit, leaving a net recovery of $53,146.52.

Petitioner keeps its books upon the accrual basis and makes its income tax returns on the basis of a fiscal year ending October 31.

In his deficiency notice the respondent included the amount of $53,146.52 in petitioner's gross income for the taxable year ended October 31, 1935. The petitioner contends that the amount did not represent taxable income but was "a compensation for injury to capital." In support of its contention the petitioner cites, among other cases, *Gould* v. *Gould*, 245 U. S. 151; *United States* v. *Safety Car Heating & Lighting Co.*, 297 U. S. 88; *Saunders* v. *Commissioner*, 29 Fed. (2d) 834; *Heiner* v. *Hewes*, 30 Fed. (2d) 787; and *Farmers' & Merchants' Bank of Catlettsburg* v. *Commissioner*, 59 Fed. (2d) 912.

Those cases, we think, are not authority for petitioner's contentions in the instant case. In *Farmers' & Merchants' Bank of Catlettsburg* v. *Commissioner*, supra, which petitioner submits is identical in principle with the instant case, it was held that an amount received by the Farmers' & Merchants' Bank of Catlettsburg, Kentucky, in settlement of an action against the Federal Reserve Bank for damages resulting from injury to its business, did not constitute taxable income. The court pointed out in its opinion that:

The fund involved must be considered in the light of the claim from which it was realized and which is reflected in the petition filed in its action against the Reserve Bank. We find nothing therein to indicate, with the certainty required in the statement of a cause of action, that petitioner sought reparation for profits which petitioners' misconduct prevented it from earning in 1925. * * * Petitioner not only did not insist upon the restoration of anticipated profits as a matter of fact, but based its claim for damages upon an alleged tortious injury to the good will of its business, and we can see no legal distinction between compensation for destruction of or damage to incorporeal or intangible property, such as good will, and similar compensation for damage to tangible property. Compare *Harris & Co.* v. *Lucas* (C. C. A.) 48 F. (2d) 187, syl. 5.

In the instant case the action brought by the petitioner was, in substance, an action to recover the income and the shares of stock to which it was entitled under its contract with Wrather, of which it had been deprived by the fraudulent acts of the defendants. In other words, the petitioner here did seek "reparation for profits" which the defendants' misconduct had "prevented it from earning." The distinction, we think, is a vital one. Under petitioner's contract with Wrather, and with the Michigan Central Refining Co. as assignee, it was entitled to certain profits of the refinery if and when earned. There can be no question that such profits would have been

taxable to the petitioner if they had been timely received by it in accordance with the terms of the agreement. The fact that the receipt of such profits by the petitioner was postponed until a later year by the fraudulent acts of others does not affect their nature as taxable income.

In *United States* v. *Safety Car Heating & Lighting Co., supra*, the Supreme Court pointed out the distinction between a "contested claim for profits which if prosecuted effectively would ripen into income" and a suit based upon "an injury to capital, with the result that the recovery is never income, no matter when collected."

Petitioner's claim against the Michigan Central Refining Co. and others was, undeniably, a claim for profits rather than a claim for loss of or injury to capital, as the distinction has been made by the courts.

We are of the opinion, further, that the amount received by the petitioner is taxable to it in the year 1935 when petitioner's right to the recovery was fixed by the court and became definite in amount. As the Court further said in *United States* v. *Safety Car Heating & Lighting Co., supra:*

\* \* \* Claims existing unconditionally before March 1, 1913, being thus excluded from the tax, the plain meaning of the regulation is that conditional or contingent claims, though they may have had an inchoate existence before March 1, 1913, are to be taxed when they are shorn of their conditional or contingent quality and become unconditional or absolute. So far as the problem to be solved depends upon the intention of the Congress in the enactment of the statute, the result is hardly doubtful.

In *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417, the Supreme Court held that income which was earned in 1916 but impounded by a receiver pending the outcome of litigation and actually paid to the taxpayer in 1917, was taxable income to the petitioner in 1917. See also *H. Liebes & Co.* v. *Commissioner*, 90 Fed. (2d) 932, and cases therein cited.

The fact that petitioner kept its books and accounts upon the accrual basis does not alter the result, for, as said by the court in *H. Liebes & Co.* v. *Commissioner, supra:*

\* \* \* income accrues to a taxpayer, when there arises to him a fixed or unconditional right to receive it, if there is a reasonable expectancy that the right will be converted into money or its equivalent.

In the instant case there was no time prior to the decision of the court establishing petitioner's right to the recovery when the petitioner had a fixed or unconditional right to the income and a reasonable expectancy that the right would be converted into money or its equivalent.

The remaining issue involves the right of petitioner to a loss or bad debt deduction of $2,665.51. A portion of that amount, $889.32,

represents the balance of a deposit in a closed bank and the remainder, $1,776.19, represents bad debts, both of which amounts the petitioner ascertained to be worthless and charged off in its return.

The evidence of record is convincing that the balance of the bank account as well as the debts in question were worthless and uncollectible at the close of petitioner's taxable year and the amount claimed is therefore deductible in its entirety.

*Decision will be entered under Rule 50.*