C. T. Haskell v. Commissioner. Emma B. Haskell v. Commissioner.
Haskell v. Commissioner
Docket Nos. 112627, 112628.
United States Tax Court
1944 Tax Ct. Memo LEXIS 348; 3 T.C.M. (CCH) 179; T.C.M. (RIA) 44062; February 28, 1944
*348 C. T. Haskell, pro se, for the petitioner. W. H. Payne, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY Judge: These proceedings involve the redetermination of deficiencies of $531.95 and $348.13 in income taxes of the respective petitioners for the year 1940. The issue is whether the respondent erred in disallowing a bad debt deduction of $3,783.40 to each petitioner arising from a stock brokerage account. The proceedings were consolidated for hearing and report. Findings of Fact The petitioners, husband and wife, are a marital community under the laws of Washington. For convenience the husband will sometimes be referred to herein as the petitioner. The returns of the petitioners for 1940 were filed with the collector at Tacoma, Washington. For four or five years prior to January, 1939, petitioner had a stock brokerage account with a stockbroker with an office at Wenatchee, Washington. The purchases of stock made by petitioner under his account were generally on a marginal basis, in connection with which petitioner supplied the broker with additional margin, when requested. He made outright purchases of stocks not listed on the New York Stock Exchange. *349 The broker, upon request, made payments to petitioner from the account. Petitioner did not know whether the money he paid to the broker for the purchase of stock was actually used by the broker for that purpose. On about January 10, 1939, as the result of an examination made by a representative of the Security Exchange Commission of the affairs of the broker, the broker's office was closed and he was arrested and placed in jail. Petitioner learned of the arrest, and the reason therefor, a few days after it occurred. On the complaint of two witnesses, not including petitioner or his wife, or involving his account, the broker was indicted, tried and convicted of embezzlement. The affairs of the broker were placed under the jurisdiction of a state insolvency court in 1939 and later in the same year were transferred to a bankruptcy court. Claims aggregating approximately $185,000 were filed in the proceedings of which about $106,000 were allowed. Petitioner filed a claim with the bankruptcy court in 1939, based upon the market value on the date the broker filed his petition in bankruptcy of stock shown to the credit of petitioner on the books of the broker. About 14.09 per cent of petitioner's *350 claim was allowed. Two dividends were received by petitioner, the first in August, 1940, and the second in September, 1940. Petitioner received no stock after the Security Exchange Commission commenced its investigation of the affairs of the broker. The returns filed by petitioners for 1939 showed no tax liability and contained no deductions on account of the payments made to the broker for stock. The returns filed by the petitioners for 1940 contained a community deduction of $7,566.80 for bad debts. In his determination of the deficiency the respondent disallowed the deduction with the following explanation for his action: "You claimed as a bad debt. the amount of loss you sustained as the result of embezzlement of N. J. Larimer, an individual who formerly operated a stock brokerage business at Wenatchee. The loss was sustained prior to January 1, 1940 and is therefore not an allowable deduction from 1940 income." The evidence does not establish that the amount in question was a loss sustained or a bad debt which became worthless, within the taxable year. Opinion The petitioner claimed the result of his dealings with the broker as a bad debt deduction. The respondent concluded *351 that the loss resulted from embezzlements of the stockbroker and that the deduction was controlled by the loss provision of the statute. Upon brief petitioners contend that a debt was created within the meaning of section 23 (k) (1) of the Internal Revenue Code when the stockbroker became insolvent and was unable to produce their securities, and that respondent's burden here was to show Congressional intent to exclude the transaction from the operation of that section. They argue that the purpose of section 23 (e) (3) in a case such as this one, is to allow deductions for losses for theft committed by unknown persons. It is well settled that the bad debt and loss provisions of revenue acts are mutually exclusive. Spring City Foundry Co. v. Commissioner, 292 U.S. 182. Embezzlement gives rise to a loss deduction in the year of commission of the act, not a bad debt deduction. Parker Wire Goods Co., 8 B.T.A. 448; Gottlieb Realty Co., 28 B.T.A. 418; Grenada Bank, 32 B.T.A. 1290; First National Bank of Sharon, Pa. v. Heiner, 66 Fed. (2d) 925; *352 Borden v. Commissioner, 101 Fed. (2d) 44; Earle v. Commissioner, 72 Fed. (2d) 366. The case of McKnight v. Commissioner, 127 Fed. (2d) 572, involved the question of whether embezzled funds were taxable to the embezzler and is not regarded as being contrary to the rule on the proper classification of a deduction for embezzled property. Deductions from gross income are a matter of legislative grace and may not be taken unless clearly authorized. New Colonial Ice Co. v. Helvering, 292 U.S. 435. The determination of the respondent is presumptively correct and the burden of petitioner was to show it to be wrong. Welch v. Helvering, 290 U.S. 111. The petitioner does not concede upon brief that his funds or property were embezzled, but his discussion of the applicable statute is based upon the theory that there was a wrongful taking of his property. The evidence does not establish what happened to the property of petitioner in the hands of the broker, and none of it is opposed to the conclusion reached by respondent in his determination *353 of the deficiencies that the deductions claimed by the petitioners resulted from embezzlements of the broker. Thus petitioner has failed to show that his property was not embezzled and the presumption in favor of respondent's finding must stand. The affairs of the broker and petitioner's property, if any, was under the jurisdiction of a bankruptcy court during most of 1939 and in 1940. Obviously none of petitioner's property was embezzled in 1940, and there is no factual basis for a loss deduction for embezzlement in that year. Our decision need not rest on a failure of proof on the question of whether embezzlement gave rise to the loss. Section 23 (e) allows as a deduction "losses sustained during the taxable year" and subsection (k) (1), as amended by section 124 of the Revenue Act of 1942, specifically made retroactive to taxable years beginning after December 31, 1938, authorizes a deduction for "Debts which become worthless within the taxable year." The effect of the amendment is to make bad debts deductible in the year in which uncollectibility occurs, i.e., when the loss is sustained, not when the debt is ascertained to be worthless. Whether the deduction is controlled by *354 subsection (e) or (k) (1) of section 23, petitioner had the burden of showing when his loss was sustained. The stockbroker's office was closed and his affairs were placed under the jurisdiction of a bankruptcy court in 1939, in which year petitioner filed his claim. Obviously the stockholder had no property of petitioner to embezzle in 1940, and no loss from embezzlement was sustained in that year. All we know about the value of the bankrupt estate is that about 14 per cent of petitioner's claim was allowed and paid in 1940. The evidence is silent on the value of the claim in 1939 and we may not assume that the claim had full value in 1939, or a greater value in 1939 than in 1940. Nothing appears to have occurred after January 1939 to change the value of the bankrupt estate. The possibility in 1939 of a future recovery would not have prevented a deduction in that year. Gottlieb Realty Co., supra. The amendment to section 23 (k) (1) by the Revenue Act of 1942 does not, as petitioners suggest, deny them any rights. See section 169, Revenue Act of 1942 extending the limitation period to seven years for adjustment of income tax liability on account of the *355 amendment. The respondent committed no error in denying the deductions in the taxable year. Accordingly Decision will be entered for the respondent.