JOSEPH PERROTTO AND MARY PERROTTO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent. CRYSTAL MOTOR LODGE, INC., Petitioner v. COMMISSIONER of internal revenue, respondent.
Perrotto v. Commissioner
Docket Nos. 8062-74, 8063-74.
United States Tax Court
T.C. Memo 1977-99; 1977 Tax Ct. Memo LEXIS 339; 36 T.C.M. (CCH) 464; T.C.M. (RIA) 770099; April 6, 1977, Filed Daniel J. O'Hern, for the petitioners. Bernard S. Mark, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, *340 Judge: Respondent determined deficiencies in petitioners' Federal income tax as follows: Petitioner
Taxable Year Ending
Deficiency
Joseph and Mary Perrotto
December 31, 1970
$ 481.42
Crystal Motor Lodge, Inc.
October 31, 1970
12,493.04
Because of concessions made by the parties, only two issues remain for decision [1]: (1) Whether Crystal Motor Lodge, Inc. is entitled to a deduction under either section 165 [2] or section 166 of losses incurred in connection with the insolvency of the Eatontown National Bank; and (2) Whether a portion of the amounts deducted in 1970 by Crystal Motor Lodge, Inc. as "automobile expense" is allocable to Joseph Perrotto's personal use, thereby constituting a constructive dividend to Perrotto and a nondeductible expense to Crystal Motor Lodge, Inc. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners Joseph and Mary Perrotto *341 resided in Elizabeth, New Jersey at the time they filed their petition. Mary Perrotto is a party only by virtue of having filed a joint return with her husband. Crystal Motor Lodge, Inc. ("Crystal") had its principal place of business in Eatontown, New Jersey when it filed its petition. Crystal operated a seventy-five unit motel in Eatontown, New Jersey. It did the bulk of its business during the summer months and thus had chosen a fiscal year ending October 31. Joseph Perrotto was president and treasurer of Crystal and his son was secretary of the corporation. Both Perrotto and his son were also shareholders in Crystal. Crystal deposited its motel receipts in either the National State Bank in Elizabeth, New Jersey, or the Eatontown National Bank in Eatontown, New Jersey. On August 7, 1970, the news of a major embezzlement at the Eatontown National Bank became public, and the Controller of the Currency declared the bank insolvent and appointed the Federal Deposit Insurance Corporation ("FDIC") as its receiver. On the date of the insolvency, Crystal had $41,117.93 on deposit in Eatontown National Bank. Crystal immediately began to take steps to recover the funds it had *342 on deposit at Eatontown National Bank. On August 16, 1970, the FDIC paid $20,000 to Crystal, which represented the maximum amount of insurance coverage which the FDIC then provided for any single account. On the same day, Crystal filed a claim with the FDIC for the remaining $21,117.93. Thereafter Crystal's officers continued their efforts to recover the unpaid portion of Crystal's claim. Despite these efforts, at the close of Crystal's fiscal year ending October 31, 1970, the FDIC was still unable to indicate how much of the claim Crystal would recover or when. The FDIC, however, did inform Crystal and the other depositors of Eatontown National Bank that it anticipated declaring liquidating dividends sometime in the future. In late November 1970, the FDIC certified Crystal's claim for $21,117.93 against Eatontown National Bank. Subsequently a Receiver's Certificate to this effect was prepared and sent to Crystal. In a letter, dated December 9, 1970, which accompanied the Receiver's Certificate, the FDIC again indicated that "[it] is anticipated that dividends will be declared in the future. * * *" The slow unraveling of events continued into 1971. In September 1971, *343 the FDIC determined that $1,776.15 of Crystal's claim was a preferred claim and immediately paid Crystal this amount. Thereafter, the FDIC paid the following liquidating dividends on Crystal's Receiver's Certificate: April 28, 1972
$7,736.71
November 7, 1972
3,868.36
February 14, 1975
4,535.46 These dividends plus the preferred claim payment equaled 85 percent of Crystal's original claim. On its Federal corporate income tax return for the fiscal year ending October 31, 1970, Crystal deducted $21,117.93 as a "Loss from Bankruptcy of Eatontown National Bank--Excess of balance in account over insurance coverage." Respondent disallowed this deduction. 2a
During 1970 Crystal owned a station wagon and a Cadillac automobile. The station wagon was primarily used for errands and maintenance work at the motel.The Cadillac was used to transport motel guests to and from a nearby airport. After the collapse of Eatontown National Bank, Joseph Perrotto also used the Cadillac for weekly deposit trips to the National State Bank in Elizabeth. In addition, *344 Perrotto used the Cadillac daily to commute the thirty-four miles from the motel in Eatontown to his home in Elizabeth. Crystal claimed $3,691.14 for automobile expenses on its return for the fiscal year ending October 31, 1970. Respondent disallowed $1,340 of this amount. Respondent also determined that Joseph Perrotto received a constructive dividend of $1,340 in 1970. OPINION On August 7, 1970, the Controller of the Currency declared the Eatontown National Bank insolvent and appointed the FDIC its receiver. Crystal Motor Lodge, Inc. on that day had $41,117.93 on deposit with that bank, only $20,000 of which was insured by the FDIC.Petitioner Crystal argues that the remaining $21,117.93 of deposits, uninsured by the FDIC, is deductible as an embezzlement (theft) loss under section 165. [3]
*345 It defends its characterization of the loss as an embezzlement loss by pointing to the embezzlement which triggered Eatontown National Bank's collapse. Respondent contends that the uninsured unpaid deposit was not an embezzlement loss but a bad debt under section 166[4] and that petitioner has failed to prove that this debt or any portion thereof became worthless in 1970. We agree with respondent on both counts. Embezzlement as commonly understood occurs when a malefactor who lawfully comes into possession of property criminally misappropriates it. See Brill v. Commissioner,30 B.T.A. 40, 42-43 (1934). A classic example of this crime is the taking of funds from an employer by a trusted employee. Ramsay Scarlett & Co. v. Commissioner,61 T.C. 795 (1974), *346 affd. 521 F. 2d 786 (4th Cir. 1975); Grenada Bank v. Commissioner,32 B.T.A. 1290 (1935). In our case petitioner's property was not embezzled. Rather, the bank's property was embezzled and as a consequence the bank became insolvent. Petitioner cites us to no authority which would extend the concept of a theft loss to cover a theft's indirect secondary result to the victim's creditor. Nor has petitioner advanced any plausible reasons why this kind of bad debt is any less a bad debt than any other. We think that respondent's analysis based on bad debt is consistent with the facts and the pertinent case law. The relationship between a bank and its typical depositor of funds is that of a debtor and a creditor. [5] Therefore upon Eatontown National Bank's collapse, Crystal was a creditor of the bank. Since the economic loss which Crystal sustained arose from a debtor-creditor relationship, it therefore comes within the bad debt provisions of section 166. We need not inquire as to whether section 165 also describes Crystal's situation, since if a transaction comes within section 166, as we have found this transaction does, then that section, rather than *347 section 165, applies. Spring City Foundry Co. v. Commissioner,292 U.S. 182, 189 (1934). *348 In order to be entitled to a bad debt deduction in 1970, petitioner must establish that its debt became worthless in the taxable year, a factual question upon which the burden of proof rests on petitioner. Dustin v. Commissioner,53 T.C. 491, 501 (1969), affd. 467 F. 2d 47 (9th Cir. 1972). However, at the end of Crystal's fiscal year ending October 31, 1970, there was a significant likelihood that Crystal would recover at least some portion, and possibly all, of its debt. Greene County Farmers Sales Ass'n. v. United States,55 F. Supp. 123, 127 (Ct. Cl. 1944). We thus find no identifiable event in 1970 establishing total or partial worthlessness. As this Court stated in a similar factual situation ( Eastern New Jersey Power Co. v. Commissioner,37 B.T.A. 1037, 1040 (1938)): It appears that the claim of the petitioner had possibilities of being paid in part if not in full, even though collection appeared to be a slow prospect… A creditor may not charge off as worthless a claim merely because collection may be slow. We conclude that petitioner has failed to establish that the debt was worthless at the end of *349 its fiscal year ending October 31, 1970. We turn to the second issue. During 1970, Crystal furnished to Joseph Perrotto, a shareholder and officer, a Cadillac automobile which he used in commuting between his personal residence and Crystal's motel. Respondent determined that $1,340 of the corporation's overall automobile expense deduction of $3,691.14 was attributable to such personal use of the automobile by Perrotto, and was not deductible by Crystal and was includible in Perrotto's income as a constructive dividend. Crystal does not deny that it paid Perrotto's commuting expenses but urges that such costs were deductible as an ordinary and necessary business expense under section 162.[6] A corporation normally is not entitled to deduct as an ordinary and necessary business expense reimbursed commuting expenses of its employees or shareholders. Leadbetter v. Commissioner,39 B.T.A. 629, 634 (1939). [7] Petitioner, upon whom the burden of persuasion rests, has provided no basis for us to conclude that Perrotto's commuting expenses were deductible.
*350 Petitioner further contends that the Cadillac was a tool which was required to be available at Crystal's place of business. This Court in Patti v. Commissioner,34 T.C.M. 521, 44 P-H Memo. T.C. par. 75,107 (1975), has already disposed of this argument and limited the rationale of Fausner v. Commissioner,413 U.S. 838 (1973), to tool carrying situations by noting: Earlier decisions of this Court have consistently disallowed the deduction of the automobile expenses incurred by a taxpayer in driving between the taxpayer's residence and his place of business, even though the automobile was thereafter required and used by the taxpayer for the purpose of making business or professional calls. [Citations omitted.] Nothing in Rev. Rul. 63-100 [1963-1 C.B. 34] would warrant the adoption of a different rule in this case. Crystal has failed to submit any evidence indicating that respondent's allocation of its automobile expense between Perrotto's personal use of the Cadillac for commuting and legitimate business needs was incorrect. Commissioner v. Riss,374 F. 2d 161, 170 (8th Cir. 1967), affg. a Memorandum Opinion *351 of this Court; Moline Dispatch Co. v. Commissioner,11 B.T.A. 934, 943 (1928). Since the burden of persuasion rests on petitioner, we sustain respondent's determination that Crystal is not entitled to $1,340 of its claimed automobile expense. Respondent also asserts that Perrotto's use of the Cadillac for commuting amounted to a constructive dividend to Perrotto. Perrotto, who bears the burden of persuasion, presented no evidence casting doubt on respondent's characterization. We therefore conclude that Perrotto's use of the automobile constituted a constructive dividend to him. Commissioner v. Riss,supra at 167; Nicholls, North, Buse Co. v. Commissioner,56 T.C. 1225, 1238 (1971); Challenge Manufacturing Co. v. Commissioner,37 T.C. 650, 663 (1962). Petitioner has submitted no evidence concerning the value of the benefits he received. We therefore sustain respondent's determination that Perrotto received a constructive dividend from Crystal in 1970 of $1,340. Decisions will be entered under Rule 155. Footnotes
1. Upon respondent's oral motion at trial, we have ordered these two dockets to be consolidated for purposes of trial, briefing, and opinion. ↩
2. All section references are to the Internal Revenue Code of 1954, as in effect during the year in issue.↩
2a. Crystal included in income all of the subsequent FDIC payments it received, except the November 7, 1972 payment.↩
3. Section 165 provides in pertinent part: (a) General Rule.--There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * *
(e) Theft Losses.--For purposes of subsection (a), any loss arising from theft shall be treated as sustained during the taxable year in which the taxpayer discovers such loss.↩
4. Section 166 provides in pertinent part: (a) General Rule.-- (1) Wholly Worthless Debts.--There shall be allowed as a deduction any debt which becomes worthless within the taxable year. (2) Partially Worthless Debts.--When satisfied that a debt is recoverable only in part, the Secretary or his delegate may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction.↩
5. In considering the tax consequences of the many bank failures of the 1930's, courts have treated as bad debts losses sustained by the depositors. Kentucky Rock Asphalt Co. v. Helburn,108 F. 2d 779, 781 (6th Cir. 1940); Swastika Oil & Gas Co. v. Commissioner,40 B.T.A. 798, 801-802 (1939), affd. 123 F. 2d 382 (6th Cir. 1941), cert. denied 317 U.S. 639 (1942); Eastern New Jersey Power Co. v. Commissioner,37 B.T.A. 1037, 1039 (1938); Est. of Grant v. Commissioner,36 B.T.A. 1233, 1242 (1937); see Rev. Rul. 71-577, 1971-2 C.B. 129. The pre-1942 statutory language allowing a deduction for bad debts read, in pertinent part, as follows: "Debts ascertained to be worthless and charged off within the taxable year * * *." This wording had its origin in sections 214(a)(7) and 234(a)(5), the first pertaining to individuals and the second to corporations, of the Revenue Act of 1918, ch. 18, 40 Stat. 1067, 1078 and continued unchanged through subsequent revenue enactments until 1942: Revenue Act of 1921, ch. 136, sections 214(a)(7), 234(a)(5), 42 Stat. 240, 255; Revenue Act of 1924, ch. 234, sections 214(a)(7), 234(a)(5), 43 Stat. 270, 284; Revenue Act of 1926, ch. 27, sections 214(a)(7), 234(a)(5), 44 Stat. 27, 42; Revenue Act of 1928, ch. 852, section 23(j), 45 Stat. 800; Revenue Act of 1932, ch. 209, section 23(j), 47 Stat. 180; Revenue Act of 1934, ch. 277, section 23(k), 48 Stat. 689; Revenue Act of 1936, ch. 690, section 23(k), 49 Stat. 1660; Revenue Act of 1938, ch. 289, section 23(k), 52 Stat. 462; Internal Revenue Code of 1939, ch. 2, section 23(k), 53 Stat. 13. In 1942 the pertinent part of the bad debt provision was amended to read: "Debts which become worthless within the taxable year * * *." Revenue Act of 1942, ch. 619, sec. 124, 56 Stat. 820; H. Rept. 2333, 77th Cong. 2d Sess. (1942), 1942-2 C.B. 372, 408-409, 431; S. Rept. 1631, 77th Cong. 2d Sess. (1942), 1942-2 C.B. 504, 572. This wording continued substantially unchanged into section 166(a)(1) of the Internal Revenue Code of 1954. The 1942 amendment did not affect the meaning of the word "debt."↩
6. Petitioner does not contend that its provision of the automobile to Perrotto amounted to additional compensation. Compare Rodgers Dairy Co. v. Commissioner,14 T.C. 66, 73-74↩ (1950). 7. Larrabee v. United States, an unreported case ( D.C. Ca. 1968, 22 A.F.T.R. 2d 5075, 68-2U.S.T.C. par. 9442); Tussaud's Wax Museums, Inc. v. Commissioner,25 T.C.M. 1081↩, 1092-1093, 35 P-H Memo. T.C. par. 66,211 at 66-1225 (1966).